Mona E. ROGERS, Plaintiff,

v.

STATE OF ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, et al., Defendants.

No. 92–D–593–N.

United States District Court, M.D. Alabama, N.D.

May 26, 1993.

988

Charles Warren Rowe and Edward S. Brown, Enterprise, AL, for plaintiff.

G.R. Trawick, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This cause is now before the Court on Defendants' Motion to Dismiss or Alternative Motion for Summary Judgment filed herein June 4, 1992 and on the parties' briefs and submissions in support of and in opposition to the Motion. Because matters outside the pleadings must be considered in deciding the Motion, the Court will treat the Motion as a Motion for Summary Judgment. Fed. R.Civ.P. 12(b). As discussed below, the Motion for Summary Judgment is due to be granted in part and denied in part. Also before the Court is Plaintiff's Motion for Leave to Amend Complaint filed herein February 11, 1993. This Motion is due to be and is hereby GRANTED.[1]

### I. Facts [2]

In March, 1991, Plaintiff was involuntarily committed to an Alabama State Mental Institution at Searcy Hospital in Mobile, Alabama. Plaintiff was pregnant at the time of her commitment. While at Searcy Hospital, Plaintiff was placed on "medical observation." This status required that Plaintiff be attended by a staff member or nurse at all times except when Plaintiff was in a secluded area.[3]

1. Plaintiff's Second Amended Complaint seeks to add fourteen individuals as Defendants in this action and also asserts a different theory of liability against certain "supervisory" officials under 42 U.S.C. § 1983. All of the fourteen new Defendants are entitled to summary judgment, as will be discussed below. However, Plaintiff's claim of inadequate supervision and training in violation of § 1983 as stated in the Second Amended Complaint is due to survive against two Defendants. This claim is discussed in detail below.

2. The material facts in this case are seriously disputed. The facts as stated by the Court are those that are supported by substantial evidence submitted by the Plaintiff as non-moving party.

3. Plaintiff testified in affidavit that her status required this "one-to-one" treatment. [Plaintiff's Affidavit of September 4, 1992 at 2]. Defendants have moved to strike this portion of Plaintiff's affidavit asserting that the statement is an inadmissible lay witness opinion under Rule 701,

In the early hours of May 22, 1991, Plaintiff went unattended to the "smoking room" at Searcy Hospital. While in the "smoking room," Plaintiff was raped by another patient. Plaintiff did not report the alleged rape until the next day.

Plaintiff filed suit asserting theories of negligence, wantonness, breach of implied warranty, and violation of 42 U.S.C. § 1983 against the Alabama Department of Mental Health and Mental Retardation (the "Department") and numerous individuals associated with the Department in various capacities. Thirteen of the individuals are alleged to have been responsible for monitoring Plaintiff on the night Plaintiff was allegedly raped. The remaining individual Defendants are alleged to have failed to provide Plaintiff with adequate security in their supervisory capacities. Three of these Defendants (Horsley, Reddoch, and Poundstone) are high level administrators for the Department, two (Bartlett and Boyd) are administrators at Searcy Hospital and one (Bloodworth) is the staff psychiatrist who was responsible for Plaintiff's treatment during her confinement.

Defendants seek summary judgment on the 42 U.S.C. § 1983 claim based on absolute and qualified immunity under the Eleventh Amendment to the United States Constitution. Defendants seek summary judgment on Plaintiff's state law claims based on the immunity provided under Section 14 of the Alabama Constitution.

## II. Standard for Summary Judgment

In considering a motion for summary judgment, this Court must refrain from deciding material factual issues but, rather, must decide whether such factual issues exist and, if not, whether the party moving for summary judgment is entitled to judgment as a matter of law. *See Dominick v. Dixie National Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). Furthermore, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *See Tip-*

*pens v. Celotex Corp.,* 805 F.2d 949 (11th Cir.1986). "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *accord Kramer v. Unitas,* 831 F.2d 994, 997 (11th Cir.1987). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact.*" *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a [reasonable] jury to return a verdict for that party.... If the evidence is merely colorable ,.. or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511; *accord Brown v. City of Clewiston,* 848 F.2d 1534, 1537 (11th Cir.1988).

## III. The 42 U.S.C. § 1983 Claim

■ There is no question that the Eleventh Amendment to the United States Constitution bars a Plaintiff from recovering money damages "which must be paid from public funds in the state treasury." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). This absolute immunity applies to the state itself as well as to state agencies. The Department is without doubt a department of the state government, Ala. Code § 22–50–2, and is therefore absolutely immune from suit. The Department is therefore entitled to summary judgment on the § 1983 claim. This absolute immunity also extends to state officials acting in their official capacities. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1355. All individual

Federal Rules of Evidence. The Court notes that Plaintiff's medical records, submitted by Defendants, establishes that Plaintiff was on "medical observation" status. Defendants do not deny that this status requires one-on-one observation, but merely object to Plaintiff so testifying. The

Court finds that Plaintiff's opinion as to her status is "rationally based on her perception" and "helpful to ... the determination of a fact in issue." Fed.R.Evid. 701. Defendants' Motion to Strike is therefore DENIED.

Defendants are therefore entitled to summary judgment in their *official* capacities.

■ Plaintiff, however, also asserts liability against the individual Defendants in their personal capacities. In response, Defendants seek the protection of qualified immunity, which shields them from individual liability unless they engaged in conduct that violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Furthermore, even if a particular right is "clearly established" for purposes of defeating a qualified immunity defense, a supervisor may not be held liable for the acts or omissions of a subordinate on a mere "respondeat superior" theory. Instead, a supervisor may be held liable only if the supervisor's own conduct in training and/or supervising the subordinate demonstrated "deliberate indifference" to the rights of Plaintiff. *Greason v. Kemp*, 891 F.2d 829, 836–37 (11th Cir.1990).

As an initial matter, it is certainly "clearly established" that an involuntarily committed mental patient has a constitutionally protected right to reasonably safe conditions of confinement. *Youngblood v. Romeo*, 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982). In the present case, there is substantial evidence from which a jury could conclude that Plaintiff was supposed to be observed by a hospital employee at all times other than when Plaintiff was in a secluded area, and that *someone* violated this condition of Plaintiff's confinement. Under these circumstances, one could logically argue that the person or persons who failed to monitor Plaintiff did indeed violate Plaintiff's constitutionally protected right to reasonable security under *Youngblood*. In an attempt to place liability on the person or persons responsible for such monitoring, Plaintiff has named as a Defendant virtually everyone who was on duty on the night Plaintiff was allegedly raped. Plaintiff alleges that some thirteen individuals were each responsible for monitoring Plaintiff on the night of the alleged rape and that each of these thirteen Defendants violated this duty. [Second Amended Complaint at ¶¶ 15–19].

■ While Plaintiff makes *allegations* against each of these thirteen individuals, Plaintiff has submitted absolutely no evidence supporting the claim that any of the individuals were responsible for personally monitoring the Plaintiff on the night of the alleged rape. In opposing Plaintiff's Motion for Leave to Amend Complaint, Defendants note that some of these thirteen individuals were not even working on Plaintiff's floor on the night of the alleged rape, and that Plaintiff had made no attempt to determine through discovery the names of the individuals responsible for monitoring Plaintiff on that night. Instead, Plaintiff has engaged in "shotgun" pleading without any evidence to support the pleading. The Court agrees with Defendants that Plaintiff has submitted *no evidence* that would support liability against any of these thirteen individuals. Defendants Donna Roy, Christine Abrams, Helena Hou, Glenda Edwards, Barbara Abrams, Orvester Joiner, Boyce Williams, Joseph Benjamin, Lisa Davis, Angela Saulsberry, Ollie Ezell, Charles Glass, and Brenda Maiben are therefore entitled to summary judgment as to the § 1983 claim.

Unsuccessful in her attempt to submit any evidence to support liability against anyone directly responsible for the failure to monitor her activities on the night of the alleged rape, Plaintiff also seeks to impose liability against several officials for their alleged failure to properly supervise and/or train those persons responsible for ensuring Plaintiff's security. These officials include the Commissioner, the Deputy Commissioner, and the Associate Commissioner of the Department and the Director of Searcy Hospital, the Director of the Admissions Unit at Searcy Hospital, and Plaintiff's treating psychiatrist at Searcy Hospital.

The Eleventh Circuit Court of Appeals has previously addressed supervisory liability under § 1983 in the context of a supervising psychiatrist's failure to ensure that subordinate psychiatrists were providing adequate mental health care to a prison inmate. *Greason v. Kemp*, 891 F.2d 829 (11th Cir.1990). The Court first reaffirmed that respondeat superior would not support a claim against a supervisor under 42 U.S.C. § 1983. *Id.* at

836 (citing *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). The Court went on to establish a three-part test for determining whether a supervisor's own actions would support § 1983 liability:

(1) whether, in failing to train and supervise subordinates, [the supervisor] was deliberately indifferent to an inmate's mental health care needs; (2) whether a reasonable person in the supervisor's position would know that his failure to train and supervise reflected deliberate indifference; and (3) whether [the supervisor's] conduct was causally related to the constitutional infringement by his subordinate.

*Id.* at 836–37.

In regards to the three officials of the Department, there is no doubt that Plaintiff seeks to impose liability based solely on respondeat superior. There is no evidence that the Department officials are even responsible for the hiring, training, and supervision of those alleged to have violated Plaintiff's rights by failing to provide her with adequate security. Therefore, Defendants Horsley, Reddoch, and Poundstone, are entitled to summary judgment.[4] Similarly, the "supervisory" claim against Dr. Ronald Bloodworth is, at best, based on respondeat superior. While Plaintiff alleges, and Defendants do not dispute, that Defendant Bloodworth was "responsible for the Plaintiff receiving proper psychiatric treatment, care, and analysis," there is no evidence that even suggests that Defendant Bloodworth was responsible for the training or supervision of the person or persons who were given the duty to monitor Plaintiff on the night of the alleged rape. While a treating physicians' duties to his patient are substantial, there is no evidence supporting the allegation that Defendant Bloodworth was responsible for proper security training or supervision. Defendant Bloodworth is therefore entitled to summary judgment.

While none of the previously discussed Defendants bore supervisory or training responsibility over the person or persons who allegedly violated Plaintiff's constitutional rights, this is not true of Defendants Bartlett and Boyd, who serve as Director of Searcy Hospital and Director of the Admissions Unit,[5] respectively. In their respective capacities as directors, these two Defendants were responsible for the hiring, training, and supervision of the individuals charged with the responsibility of monitoring patients with a "medical observation" status. As noted previously, however, the mere fact that Defendants Bartlett and Boyd held supervisory positions does not establish that these Defendants would be liable for constitutional violations by subordinates. To impose liability on this basis would effectively vitiate the rule that liability cannot be based on respondeat superior. In order to impose liability on these two Defendants in their supervisory capacity, Plaintiff must submit substantial evidence that the two Defendants were "deliberately indifferent" to her security needs and that a reasonable person in the position of Bartlett and/or Boyd would have known that their failure to train and/or supervise their subordinates reflected deliberate indifference.

In considering whether a jury could find that Bartlett or Boyd acted with deliberate indifference, the Court must consider what these individuals knew or should have known prior to the alleged rape. From the evidence submitted, Bartlett and Boyd knew or should have known that a patient placed under "medical observation" would be subjected to one-on-one monitoring unless the patient were in a secluded area. The Plaintiff has submitted evidence that, if believed, would establish that such practice was the policy of the hospital. If Defendants Bartlett and Boyd reasonably believed that such policy

---

4. In the original Complaint and the First Amended Complaint, Plaintiff also named Governor Guy Hunt as Defendant in his capacity as Chairman of the Board of Trustees of the Department. Plaintiff's Second Amended Complaint does not name the Governor in the heading of the Complaint, but does name him in the body at ¶ 11. Assuming that the Governor is still a Defendant in this action, he is entitled to summary judg-

ment on the same grounds as Defendants Horsley, Reddoch, and Poundstone.

5. Although it is not completely clear from the submissions of the parties, the "Admissions Unit" is apparently the unit at Searcy Hospital in which Plaintiff was confined.

was being followed, then they cannot be said to have been "deliberately indifferent" and would therefore be immune from supervisory liability.

At least one court has considered a situation similar to the present case and found that the supervisory officials could not be held liable for an "isolated incident" of constitutional violation. In *Butler v. Commissioner of Mental Health*, 463 F.Supp. 806 (E.D.Tenn.1978), the plaintiff was raped by another patient in a mental facility. Plaintiff asserted a claim for negligent supervision by failing to adequately protect Plaintiff when the defendants knew or should have known that the patients were likely to cause harm to each other. *Id.* at 809. The Court rejected this claim and concluded that the defendants were entitled to qualified immunity because the rape of plaintiff represented an isolated incident that could not give rise to an inference that the defendants knew or should have known that their conduct was deliberately indifferent to the rights of the plaintiff. *Id.* at 809–10.

Defendants argue that the "isolated incident" in *Butler* is also present in this case. They submit the affidavit of John Bartlett, which states that there has never been an allegation of rape in the twelve years he has served as Director of Searcy Hospital. [Exhibit CC to Defendants' Memorandum in Support of Summary Judgment, filed February 18, 1993]. Plaintiff responds with the deposition of Dr. Ronald Bloodworth, the psychiatrist in charge of treating Plaintiff during her stay at Searcy Hospital. In this deposition, Dr. Bloodworth concedes that there were "several" instances of "sexual contact" reported to him, but Dr. Bloodworth did not specifically respond to the question concerning instances of "sexual abuse." [Deposition of Ronald Bloodworth at 38–39]. The parties have now engaged in a battle of semantics over the terms "sexual contact" and "sexual abuse." Defendants seek to strike the use of Dr. Bloodworth's deposition as support for the proposition that Defendants knew or should have known of the possibility that Plaintiff would be raped, claiming that the term "sexual contact" includes consensual kissing or touching be-

tween competent adults, practices which are allowed under hospital policy. Defendants argue that Plaintiff made no attempt during the deposition of Dr. Bloodworth to establish the context in which the "sexual contact" occurred and further argue that the testimony is inadmissible hearsay.

The relevant question on this issue is whether Defendants Bartlett and Boyd knew or should have known that the security conditions for patients at Searcy Hospital were so lacking that Bartlett and Boyd were deliberately indifferent to Plaintiff's constitutional rights by failing to adequately train and/or supervise those persons who provided such security. If the only evidence of this deliberate indifference were the existence of prior "sexual contact" between patients, the Court would have to agree with Defendants that the alleged rape of Plaintiff was an isolated incident insufficient to establish deliberate indifference. However, Dr. Bloodworth also testified that a former patient of his at Searcy Hospital was also on a "medical observation" status and disappeared. The patient was discovered dead on a ledge at the hospital two days after her disappearance, apparently the victim of suicide. [Deposition of Dr. Bloodworth at 39]. From all of this evidence, a reasonable jury could conclude that Defendants Bartlett and Boyd, as supervisors, knew or should have known that their subordinates, who were responsible for monitoring patients on "medical observation" status, were performing this job inadequately. A reasonable jury could also find that Defendants Bartlett and Boyd, by failing to rectify this inadequate security, acted with deliberate indifference to the constitutional right to adequate security guaranteed to involuntarily committed mental patients.

The Court therefore finds that Plaintiff has submitted sufficient evidence of deliberate indifference to submit her § 1983 claim against Defendants Bartlett and Boyd, as supervisors, to a jury. Summary judgment on this claim is therefore due to be denied to Defendants Bartlett and Boyd.

### IV. The "State Law" Claims

In addition to her § 1983 claim, Plaintiff also seeks to recover under the state law theories of negligence, wantonness, and

breach of express or implied warranties. As an initial matter, the Court notes that Plaintiff has submitted no authority in support of her breach of warranty theory of liability, nor is there any evidence before the Court which suggests the existence of any such warranty. Defendants are therefore entitled to summary judgment on the breach of warranty claim in Count III of the Second Amended Complaint.

▪▪ Personal immunity from claims under state law does not depend on the question of qualified immunity under the federal Constitution, but rather on the immunity provisions of state law. Initially, it is clear that the Department, as an agency of the Alabama state government, is immune from suit under Section 14 of the Alabama Constitution. *See Taylor v. Shoemaker*, 605 So.2d 828 (Ala.1992). The Department is therefore entitled to summary judgment on all state law claims.

▪ Additionally, as discussed above, there is no evidence concerning which person or persons were responsible for monitoring Plaintiff on the night she was allegedly raped. The persons (Defendants Donna Roy, Christine Abrams, Helena Hou, Glenda Edwards, Barbara Abrams, Orvester Joiner, Boyce Williams, Joseph Benjamin, Lisa Davis, Angela Saulsberry, Ollie Ezell, Charles Glass, and Brenda Maiben) sued for negligently or wantonly failing to monitor Plaintiff are therefore also entitled to summary judgment on the state law claims.

▪ Also as discussed above, there is no evidence that Defendant Dr. Bloodworth had supervisory or training authority over any person or persons charged with the responsibility of monitoring Plaintiff on the night of the alleged rape. Dr. Bloodworth is therefore entitled to summary judgment on Plaintiff's state law claims.

▪ As to Defendants Horsley, Reddoch, and Poundstone, their actions constituted a discretionary act of delegation of authority which, at most, shows negligence. The Alabama Supreme Court has made clear that

mere negligence in performing a discretionary function will not defeat the immunity provisions of Section 14 of the Alabama Constitution. These three Defendants are therefore entitled to summary judgment on Plaintiff's state law claims.[6]

▪▪ As to Defendants Bartlett and Boyd, the question of immunity depends on whether their actions as supervisors were merely negligent or, alternatively, were done "willfully, maliciously, illegally, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." *Phillips v. Thomas*, 555 So.2d 81 (Ala.1989). As discussed above, a reasonable jury could determine that the prior suicide at Searcy Hospital and the prior "sexual contacts" between patients placed these two Defendants on notice that security provisions were inadequate to protect Plaintiff's right to reasonable security. As the Court has already found sufficient evidence to submit the question of "deliberate indifference" to a jury concerning these two Defendants' supervisory liability, it follows that there is sufficient evidence to submit the question of willfulness, malice, etc. Because the Alabama Supreme Court has found that mere negligence is not sufficient to defeat Section 14 immunity, Defendants Bartlett and Boyd are entitled to summary judgment on the negligence claim contained in Count I of Plaintiff's Second Amended Complaint. Defendants Bartlett and Boyd are not, however, entitled to summary judgment on the wantonness claim contained in Count II of the Second Amended Complaint.

## V. Conclusion

Summary judgment is due to be and is hereby GRANTED as to all claims to Defendants Michael Horsley, James Reddoch, Emmett Poundstone, Guy Hunt, Dr. Ronald Bloodworth, Donna Roy, Christine Abrams, Helena Hou, Glenda Edwards, Barbara Abrams, Orvester Joiner, Boyce Williams, Joseph Benjamin, Lisa Davis, Angela Saulsberry, Ollie Ezell, Charles Glass, Brenda Maiben, and the Alabama Department of Mental Health and Mental Retardation.

---

6. Governor Guy Hunt, is also entitled to summary judgment on the state law claims if he remains a Defendant in this action. *See supra* note 4.

994

Summary judgment is due to be and is hereby GRANTED to Defendants John Bartlett and Phil Boyd as to Counts I and III of Plaintiff's Second Amended Complaint.

Summary judgment is due to be and is hereby DENIED to Defendants Bartlett and Boyd as to Counts II and IV of Plaintiff's Second Amended Complaint and this cause shall proceed to trial only against these two Defendants to determine their liability, if any, for their alleged failure to adequately train and/or supervise the person or persons responsible for monitoring Plaintiff at the time Plaintiff was allegedly raped at Searcy Hospital.