39 F.3d 308
 Mona E. RODGERS, Plaintiff-Appellee,
v.
J. Michael HORSLEY, Commissioner of State Department of
Mental Health and Mental Retardation; James F. Reddoch,
Jr., Deputy Commissioner of State Department of Mental
Health and Mental Retardation; Emmett Poundstone, III,
Associate Commissioner for Mental Retardation State
Department of Mental Health and Mental Retardation; James
E. Folsom, Governor, State of Alabama; Alabama Department
of Mental Health and Mental Retardation, a corporation, Defendants,
John T. Bartlett, in his individual capacity; Phillip Boyd,
an individual, Defendants-Appellants.
 No. 93-6541.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 5, 1994.
 
 G.R. "Rick" Trawick, Dept. of Mental Health and Mental Retardation, Montgomery, AL, for appellants.
 (Charles) Warren Rowe, Rowe & Rowe, Edward S. Brown, Enterprise, AL, for appellee.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before HATCHETT and EDMONDSON, Circuit Judges, and SMITH*, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendants, John T. Bartlett and Phil Boyd, appeal the district court's order denying motions for summary judgment based upon the doctrine of qualified immunity in a civil rights action under 42 U.S.C. Sec. 1983. We reverse.
 
 BACKGROUND
 
 2
 In considering the denial of a defendant's summary judgment motion, we are required to view the facts, which are drawn from the pleadings, affidavits, and depositions, in the light most favorable to the plaintiff. E.g., Hardin v. Hayes, 957 F.2d 845, 848 (11th Cir.1982). As a result, the "facts" for purposes of reviewing rulings on summary judgment motions may not, in reality, be the facts. But they are the "facts" for present purposes and are set out below.
 
 
 3
 In 1991, plaintiff Mona Rodgers[1] was involuntarily civilly committed to the custody of the Alabama Department of Mental Health and Retardation ("DMH"). She was placed in the Admissions Unit at Searcy Hospital, a Mobile, Alabama psychiatric facility operated by DMH. When admitted, Plaintiff was approximately twenty-nine weeks pregnant.
 
 
 4
 On Monday, May 20, 1991, at fifteen minutes past midnight (12:15 a.m.), Rodgers entered the Unit's smoking room, located ten feet from the nurses station. Before entering the smoking room, she stopped, spoke to the nurses at the nurses station, and obtained a light for her cigarette. While she was in the smoking room, according to Rodgers, a black male entered the room and raped her. Rodgers left the smoking room fifteen minutes later, speaking to the nurses on her way out; but she did not report the rape until 2:10 p.m. on May 22.
 
 
 5
 At the time of the incident, Rodgers was on "medical observation" status because she was spotting, that is, bleeding a bit, in her vaginal region. Rodgers says that this status required a staff member to accompany her at all times ("one to one") except when she was in a secluded area of the hospital. To support this characterization of "medical observation" status, Rodgers relies exclusively on her affidavit testimony that "it had been told to me that that's the way the situation would be."[2]
 
 
 6
 Rodgers filed suit asserting various theories, including the violation of 42 U.S.C. Sec. 1983 for failure to provide her with adequate security, against the DMH and numerous individuals associated with the DMH in various capacities. The district court granted summary judgment in favor of all defendants except defendants John T. Bartlett and Phil Boyd. Rogers v. State of Ala. Dep't. of Mental Health & Mental Retardation, 825 F.Supp. 986 (M.D.Ala.1993). For the remaining defendants, Rodgers claims that her rape was caused by their failure to train and supervise subordinates adequately in violation of her "substantive due process" rights. Bartlett is the Director of Searcy Hospital and Boyd serves as Director and Chief Administrative Officer of the Admissions Unit. These defendants were responsible for hiring, training, and supervising the individuals charged with monitoring patients.
 
 
 7
 With their motions for summary judgment, defendants submitted the affidavit of defendant John Bartlett, which says that there had never been an incident of rape or an allegation of rape in the twelve years he has served as Director of Searcy Hospital. In response, Rodgers submitted the affidavit of Dr. Ronald Bloodworth, the psychiatrist in charge of treating Plaintiff during her confinement at Searcy. He testified that he was aware of several instances of "sexual contact" between patients, but that such instances were uncommon. He also testified that a former patient of his had disappeared in February 1991 and was discovered two days later, dead, "on a ledge." Rodgers claims that this dead patient was also on one-to-one observation status.
 
 
 8
 The district court, relying on Youngberg v. Romeo, 457 U.S. 307, 313-16, 102 S.Ct. 2452, 2457-58, 73 L.Ed.2d 28 (1982), concluded that the law was clearly established that involuntarily committed patients had a constitutional right to reasonably safe conditions of confinement. Rogers, 825 F.Supp. at 990. Finding enough evidence to go to the jury, the district court denied the defendants' motions for summary judgment based on qualified immunity. Id. at 992. Defendants appeal.
 
 DISCUSSION
 
 9
 Once the qualified immunity defense is raised, the plaintiff bears the burden of showing that the federal "rights" allegedly violated were "clearly established." Barts v. Joyner, 865 F.2d 1187, 1190 (11th Cir.1989) (citing Mitchell v. Forsyth, 472 U.S. 511, 527-28, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)).
 
 
 10
 Rodgers does not contest that defendants in this case performed discretionary functions. Therefore to prevail, Rodgers must show that defendants violated what were, in the circumstances, her "clearly established" federal rights and that every reasonable government official in a similar position would have known that defendants' acts were unlawful. Harlow v. Fitzgerald, 457 U.S. 800, 817-19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 11
 For a "right" to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (emphasis added). "[I]n the light of pre-existing law the unlawfulness must be apparent." Id. As the en banc court recently explained:
 
 
 12
 When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. See, e.g., Edwards v. Gilbert, 867 F.2d 1271, 1277 (11th Cir.1989). Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.
 
 
 13
 Adams v. St. Lucie County Sheriff's Dept., 962 F.2d 1563, 1575 (11th Cir.1992) (Edmondson, J., dissenting), approved en banc, 998 F.2d 923 (11th Cir.1993). Put differently, "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir.1993).
 
 
 14
 Rodgers has failed to show that in 1991 the law was clearly established. She points to no bright line established by pre-existing case law that would make it "apparent" to the defendants that what they were doing (or failing to do) was unlawful. Instead, Rodgers relies on a single case, Youngberg v. Romeo, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), which contains materially dissimilar facts.
 
 
 15
 In Youngberg, the Court created the general legal principle that persons who are involuntarily committed to state mental institutions have a right to safe conditions, freedom from bodily restraint, and a right to minimal training.[3] Id. at 315-20, 102 S.Ct. at 2458-60.
 
 
 16
 In the light of Youngberg, that an involuntarily committed patient has a constitutionally protected right to reasonably safe conditions of confinement is "clearly established." But, for purposes of qualified immunity analysis this right is far too general. See Anderson, 483 U.S. at 638-41, 107 S.Ct. at 3038-39. "General propositions have little to do with the concept of qualified immunity." Muhammad v. Wainwright, 839 F.2d 1422, 1424 (11th Cir.1987).
 
 
 17
 The question in this case is not whether, in general, involuntarily committed patients have a legally cognizable interest under the Fourteenth Amendment to safe conditions. They do. Instead, the question in this case, as in all qualified immunity cases, is fact specific: in May 1991, was it clearly established in this circuit that it was unconstitutional for a mental institution to fail to supervise a patient for fifteen minutes in the smoking room, when she was on close watch status for a health problem, when the institution had a history of some "sexual contact" involving patients other than plaintiff but no history of rape for the past twelve years, where a previous patient who was to be similarly monitored disappeared, apparently escaped through a bathroom window, and fell to her death on a ledge below, and where the plaintiff had never before complained of unwanted sexual contact from either the patient accused, any other patient, or any member of the staff? The answer is "NO."
 
 
 18
 The facts in Youngberg are just too different from those of this case to support a conclusion that it was clearly established in a particularized way that the conduct of these administrators, in the circumstances of this case, was unlawful. Unlike Rodgers, the patient in Youngberg had been injured on many occasions, both by his own violence and by the reactions of other patients to him.[4] Youngberg, 457 U.S. at 310-11, 102 S.Ct. at 2455. In contrast, Rodgers has presented no evidence of a pattern of attacks or injuries. No evidence exists of previous sexual assault or other serious battery upon Rodgers or any other patient (by another patient or by a member of the staff).
 
 
 19
 The record shows that for more than a decade before Rodgers' alleged rape no other patient in the admissions unit had been raped or had made an allegation of rape. No evidence exists in the record that either Rodgers, her doctors, or the defendants ever had reason to believe that she was at risk of assault. Before the alleged rape, Rodgers had made no complaints about any male patient in the admissions unit. At oral argument, Rodgers' lawyer conceded that the record does not support the conclusion that a strong likelihood existed that she would be physically assaulted. This case is simply too unlike the pattern of sixty to seventy injuries shown in Youngberg for that case to have settled the applicable law in these circumstances for the purposes of qualified immunity.
 
 
 20
 Not only was Youngberg too different in its facts to have settled the law, other judicial opinions (not cited by the plaintiff) have determined, in cases with facts more similar to those of this case, that no constitutional violation occurred. See Shaw by Strain v. Strackhouse, 920 F.2d 1135 (3d Cir.1990) (failure of staff member to keep watch over patient at instant he disappeared for over an hour, during which he was sexually assaulted by member of the staff, was no more than isolated mishap that could not amount to more than simple negligence); cf. Davis v. Holly, 835 F.2d 1175 (6th Cir.1987) (defendant's failure to prevent isolated incident of rape, where no allegation of other staff members engaging in similar conduct or of similar victimization of other patients, did not violate clearly established constitutional right).
 
 
 21
 Defendants are entitled to immunity unless plaintiff demonstrates that it was in May 1991 a settled question of law that the failure to supervise Rodgers for fifteen minutes under the circumstances of this case was such a substantial departure from professional standards as to violate her constitutional right to reasonably safe conditions of confinement.
 
 
 22
 Rodgers has failed to show the existence in 1991 (or now) of "clearly established" law that would have made it readily apparent to reasonable persons in the defendants' place that what defendants' were doing was a violation of federal law. Defendants therefore, are entitled to qualified immunity and should have been granted summary judgment.
 
 CONCLUSION
 
 23
 Because these defendants are entitled to summary judgment based on qualified immunity, we REVERSE.
 
 
 
 *
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 We note that plaintiff's name also appears in the record as Mona Rogers. It is unclear which spelling is correct
 
 
 [2]
 The defendants say that "medical observation" status does not require one-to-one supervision. Searcy Hospital Policy No. 3.58 and deposition testimony indicate that "medical observation" requires only that a staff member observe a patient every fifteen minutes, and that these observations need not be documented. Nonetheless, for purposes of qualified immunity analysis the plaintiff's allegation is accepted as true
 
 
 [3]
 These rights, however, "are not absolute; indeed to some extent they are in conflict." Id. at 320, 102 S.Ct. at 2460. The Court recognized that "an institution cannot protect its residents from all danger of violence if it is to permit them to have any freedom of movement." Id. Therefore, the Court concluded that the proper standard, reflecting the appropriate balance between the legitimate interests of the State and the rights of the involuntarily committed, was the deferential "professional judgment" standard. Id. at 321-22, 102 S.Ct. at 2461. And, decisions made by a professional are presumptively valid. "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323, 102 S.Ct. at 2462; see Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1144-47 (3d Cir.1990) (holding that standard is professional judgment standard rather than the Eighth Amendment deliberate indifference standard); Yvonne L. v. New Mexico Dept. of Human Services, 959 F.2d 883, 893-94 (10th Cir.1992) (same)
 
 
 [4]
 The complaint in Youngberg alleged that the plaintiff suffered injuries on at least sixty-three occasions. Id