Josephine **CHUFFO** and Diane Simon, Administrators of the Estate of Ethel A. Hare, Plaintiffs,

v.

Kenneth **RAMSEY** as Sheriff of Kane County; The County of Kane, a municipal corporation; Lisa Zegar; Correctional Medical Services of Illinois, Inc., Defendants.

No. 98 C 1720.

United States District Court, N.D. Illinois.

May 28, 1999.

Patricia Johnson Lord, Donald B. Leist, Ronald D. O'Neal, Jr., Kane County State's Attorney's Office, Geneva, IL, for Kenneth Ramsey, defendant.

Robert P. Vogt, Barbara J. Anderson, Weldon—Linne & Vogt, Chicago, IL, for Lisa Zegar, Correctional Medical Services, Inc., defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiffs sue defendants for damages arising from Ethel Hare's unfortunate death. Plaintiffs contend that Correctional Medical Services of Illinois ("CMS") and Lisa Zegar, as a supervisory prison nurse, breached their duty of care to Ms. Hare while she was imprisoned in the Kane County Adult Correctional Center ("the Jail"). In addition, Plaintiffs charge that Kenneth Ramsey, as Sheriff of Kane County, violated Ms. Hare's rights under 42 U.S.C. § 1983. Currently before the Court are Defendants'[1] motions for summary judgment.

## FACTS

Plaintiffs Josephine Chuffo and Diane Simon are the duly appointed Administrators of the Estate of Ethel A. Hare, deceased. On September 27, 1996, Ms. Hare was arrested and held at the Kane County Jail. Prior to and during her incarceration, Ms. Hare suffered from chronic liver disease, cirrhosis of the liver, hepatitis B and C, and she was HIV positive. The Jail contracted with CMS to provide basic medical attention to inmates such as Ms. Hare.

When Ms. Hare complained of stomach ailments on February 28, 1997, CMS nurses arranged for her to see the jail physician the following day. Dr. Laurain Hendricks examined Ms. Hare and ordered

Michael W. Clancy, Clancy & Krippner, St Charles, IL, Herbert Hill, Attorney at Law, Aurora, IL, for plaintiff.

---

**1.** At the Court's direction, only defendants Zegar and Ramsey filed motions for summary judgment.

her transferred to Mercy Medical Center ("Mercy") for an abdominal ultrasound and other medical testing.

At Mercy, Dr. Kenneth Lindahl determined that Ms. Hare suffered from abnormal coagulation, and admitted her to Mercy from March 3 through 5, 1997. Dr. Lindahl subsequently diagnosed Ms. Hare with portal hypertension with ascites, jaundice, coagulopathy, and found that she was HIV positive with Hepatitis B and C. Upon discharge, Dr. Lindahl noted that although Ms. Hare's condition had improved, she should be closely monitored. Dr. Lindahl directed that Ms. Hare should continue her medication, receive a post-medical follow up, and have her chemistries monitored.

Initially, Ms. Hare's condition was relatively stable. Dr. Hendricks examined Ms. Hare on March 17, 1997, and noted that Ms. Hare had lost weight, and was aware and orientated. However, Ms. Hare was still slightly jaundice and had been scratching her abdomen; Dr. Hendricks ordered treatment of continued medications. Two days later, Ms. Hare took a turn for the worse and began vomiting. On the evening of March 20, 1997, a CMS nurse examined Ms. Hare and noted that her persistent vomiting prevented Ms. Hare from keeping down any food or medication. Later that evening, Ms. Hare complained of pain, dehydration, and nausea. CMS nurses provided Ms. Hare with ice chips and water

CMS nurses examined Ms. Hare again on the afternoon of March 21, 1997. Ms. Hare "felt bad" and remained in bed for the rest of the day. The CMS staff prescribed only increased fluids and rest. Later that evening, inmates complained to guards that Ms. Hare was out of control, that she "got up from bed and acted as though she had lost her mind." CMS nurses found Ms. Hare to be flushed and disoriented, and noted that Ms. Hare had been vomiting a gritty brown substance for days. Despite Ms. Hare's well-documented medical history, CMS neither arranged

for Ms. Hare to see a physician nor go to the hospital.

At 2:30 a.m. on March 22, 1997, CMS Nurse Dethrow responded to Ms. Hare's complaints that she was extremely hot and that she experienced pain and burning with urination. Nurse Dethrow took Ms. Hare's vitals, provided Ms. Hare with Tylenol, and promised Ms. Hare that she could see the doctor in the morning. Before she could do so, however, inmates began complaining to correctional officers that Ms. Hare was gagging and required immediate medical attention. Those complaints were ignored until approximately 7:00 a.m., when a correctional officer found Ms. Hare in her cell unresponsive. The officer immediately contacted CMS.

Nurse Dethrow called an ambulance, which transported Ms. Hare to the Delnor Community Hospital. After Ms. Hare was transported to Delnor Hospital, Sherif Ramsey sought and obtained her release from custody. In doing so, Ramsey avoided having to post a deputy in Ms. Hare's hospital room. Despite treatment, Ms. Hare died during the early morning hours of March 24, 1997. The coroner listed "acute hepatic failure due to cirrhosis secondary to viral hepatitis" as the cause of death.

## ANALYSIS

Plaintiffs allege that Zegar's negligence directly and indirectly contributed to Ms. Hare's death, and seek both wrongful death and survival damages. These claims are distinctly state law claims: Plaintiffs' complaint and response brief make clear that they are pursuing their failure to supervise and train theories under Illinois law. *See, e.g.*, Pls.' Resp.Br. at p. 5 ("To prevail in a medical negligence action in Illinois . . ." and "Medical negligence theories based on a failure to supervise, train, or hire has been recognized in Illinois"). Therefore, even though Plaintiffs could have labeled their claims against Zegar as § 1983 violations, any attempt to now ar-

gue liability under § 1983 is waived. *See James v. Sheahan,* 137 F.3d 1003, 1008 (7th Cir.1998).

Plaintiffs contend that these claims are properly before us under "the doctrine of pendant jurisdiction". Pointing to their § 1983 claim against Sheriff Ramsey, Plaintiffs correctly note that we may exercise jurisdiction over their supplemental state law claims. Before addressing the merits of Defendants' summary judgment motions, we will set forth the standards that guide our inquiry.

## 1. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.,* 40 F.3d 146, 150 (7th Cir.1994). A genuine issue for trial exists only when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the evidence in a light most favorable to the non-moving party, *see Cincinnati Ins.,* 40 F.3d at 150, and draw all reasonable inferences in the non-movant's favor. *Kirk v. Federal Property Mgmt. Corp.,* 22 F.3d 135, 138 (7th Cir.1994). However, if the evidence is merely colorable, is not significantly probative, or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 261, 106 S.Ct. 2505; *see also First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985) ("Conclusory statements in affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact"). Credibility determinations and weighing evidence are jury functions, not those of a judge when ruling upon a motion for summary judgment.

*See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## 2. THE RAMSEY CLAIM

The Plaintiffs sue Ramsey for his role in Ms. Hare's death. Deliberate indifference to a prisoner's serious medical needs, whether by a prison guard or physician, is prohibited by the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, it is undisputed that Ramsey had no direct contact with Ms. Hare during the critical days before her death or with the correctional officers or CMS staff interacting with Ms. Hare during this time.

Undeterred, Plaintiffs contend that Ramsey should be held liable for the negligence of those under his control. Plaintiffs' respondent superior claim against Ramsey must fail. *Steidl v. Gramley,* 151 F.3d 739, 741 (7th Cir.1998). "To be held liable for the conduct of their subordinates, supervisors must have been personally involved in that conduct." *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988). Plaintiffs have not introduced any evidence that Ramsey was made aware or should have known of Ms. Hare's condition until just shortly before she was transferred to the hospital. Because Plaintiffs have not demonstrated that Ramsey may have acted knowingly or with deliberate, reckless indifference, Plaintiffs' claim is without merit.

In light of Ramsey's lack of personal involvement, Plaintiffs must introduce evidence that a government policy, practice, or custom proximately caused the constitutional injury. *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Steidl v. Gramley,* 151 F.3d 739 (7th Cir.1998). Plaintiffs argue that they have introduced sufficient evidence of such a policy and that Ramsey's motion for summary judgment should, therefore, be denied. Plaintiffs point to evidence showing that Ramsey had a policy of releasing on a recognizance bond critically ill prison-

ers requiring expensive in-patient care. By releasing these prisoners, Ramsey saves taxpayers the cost of stationing a deputy at the hospital, as well as funeral and burial expenses.

Even accepting Plaintiffs' I-bond claim as true, there is simply no evidence tying this policy to Ms. Hare's death. Plaintiffs fail to demonstrate how Ramsey's decision to release Ms. Hare impacted her health. Although Plaintiffs insinuate that Ramsey actually had a policy of withholding any medical care until the prisoner's condition became acute, and therefore was subject to the releasing policy, there is no evidence supporting Plaintiffs' vague contention. To the contrary, the evidence clearly shows that Plaintiff received immediate medical attention less than one month before her death when she complained of stomach pains; she was visited by the Jail physician who transferred her immediately to the hospital. Similarly, Plaintiffs have not produced any evidence that Ramsey customarily withheld medical treatment to other prisoners until their condition became acute. Simply put, Plaintiffs' undeveloped speculation that Ramsey instituted such a policy is insufficient to stave off summary judgment. Accordingly, we grant Ramsey's motion for summary judgment. Because this was Plaintiffs' only federal claim, however, we decide whether to retain jurisdiction over Plaintiffs' remaining claims.

A district court may decline to exercise supplemental jurisdiction over a pendent state-law claim when it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Although federal courts generally relinquish jurisdiction over state law claims when the federal claims are dismissed prior to trial, the decision to do so lies within the district court's broad discretion. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 727–28 (7th Cir.1998). Comity

favors the dismissal of state claims involving novel or difficult state law issues. *Centres, Inc. v. Town of Brookfield,* 148 F.3d 699, 701–02 (7th Cir.1998). However, when a plaintiff's state-law claim is without merit, the district court should retain supplemental jurisdiction to dismiss the claim. *Coe v. County of Cook,* 162 F.3d 491, 496 (7th Cir.1998) (noting that principles of comity are not implicated by retaining jurisdiction over unmeritorious claims since doing so does not offend state interests and spares the state courts additional and unnecessary work).

Having disposed of Plaintiffs' federal claim, we will retain jurisdiction over Plaintiffs' claims against Zegar for a limited purpose: to resolve her motion for summary judgment. We conclude that several of Plaintiffs' claims survive Zegar's motion for summary judgment. However, since all of Plaintiffs' surviving claims are state law claims, they are hereby dismissed for lack of jurisdiction. Similarly, we decline to retain jurisdiction over Plaintiffs' remaining state-law claims against CMS.[2]

## 3. THE ZEGAR CLAIMS

In Count V of their fourth amended complaint, Plaintiffs charge Zegar with the following negligent conduct:

a. [Zegar] failed to adequately and timely evaluate Ms. Hare's condition;

b. she failed to treat Ms. Hare;

c. she failed to timely refer Ms. Hare to other health care professionals or obtain timely consultations from other health care professionals despite Ms. Hare's obvious need for such referrals or consultations;

d. she failed to properly monitor or manage Ms. Hare's ongoing medical problems, thereby allowing those problems to accelerate and/or become exacerbate;

**2.** We further find that Plaintiffs' request to file a fifth amended complaint to assert liability

under 55 ILCS5/3–6016 is moot.

e. she failed to put in place at the Kane county Jail a system for periodically monitoring or assessing patients with chronic care and treatment needs to be certain those needs were met;

f. she failed to timely review or review with adequate care Ms. Hare's medical records from outside institutions, despite having access to those records, and then treat or care for or follow up with Ms. Hare as those records were necessary or appropriate; and

g. she failed to monitor, or monitor with adequate care, the medical care CMS was delivering to Ms. Hare during March 20 through 22, 1997 at the Kane County Jail.

Pl.'s Fourth Am.Comp. ¶ 43.

■ Plaintiffs concede that Zegar did not actually treat Ms. Hare at any time during the relevant period and that their claims attacking the sufficiency of that care must necessarily fail. We agree with the parties, and grant Zegar's motion for summary judgment on Plaintiffs' claims in paragraph 43 a, b, and c of the forth amended complaint.

Unfortunately, the consensus ends there, as the litigants part company over how to categorize the remaining allegations. Plaintiffs contend that the Court can fairly interpret their allegations as claims for negligent training and supervision. Zegar retorts that the complaint mentions neither claim, and that the allegations do not provide even minimal notice of Plaintiffs' intent to seek recovery for negligent training or supervision.

The liberal system of notice pleading envisioned by Federal Rule of Civil Procedure 8(a)(2), support Plaintiffs' call for a broad reading of the complaint. *Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir. 1997) (Plaintiffs need not "specify the particular legal theories in a complaint, so long as the facts alleged give adequate notice to the defendant of the basis of the suit."). The Seventh Circuit has held that

complaints need not contain elaborate factual recitations. They are supposed to be succinct.... [A]ny need to plead facts that, if true, establish each element of a 'cause of action' was abolished by the Rules of Civil Procedure in 1938, which to signify the radical change from code pleading also replaced 'cause of action' with 'claim for relief.' One pleads a 'claim for relief' by briefly describing the events. At this stage, the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.

*Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994); *see also Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir.1995) (finding that plaintiffs need only "provide the defendants with at least minimal notice of the claim.")

Applying this standard, we find that Plaintiffs' complaint provided Zegar with at least minimal notice of their claim that Zegar failed to properly train and supervise the CMS nurses treating Ms. Hare. Paragraph 42 of Plaintiffs' fourth amended complain alleges that "Zegar had a duty to treat, care and supervise the care provided by the health care professions working for her ... to insure they provided [adequate] treatment to Ms. Hare." The complaint further charges that Zegar failed to properly monitor Ms. Hare's care and failed to "put in place ... a system for periodically monitoring and assessing patients with chronic care and treatment needs to be certain those needs were met." Pls.' Am. Compl. ¶¶ 43 d, e, g. While counsel's drafting is hardly artful, drawing all reasonable inferences in Plaintiffs' favor, we find that Plaintiffs' complaint properly incorporates her failure to train and supervise claims.

Zegar insists that, in asserting these claims, Plaintiffs are attempting to avoid the rule that prevents this Court from holding Zegar vicariously liable for the CMS nurses' conduct.[3] Zegar cannot be

3. Although Zegar cites no direct authority in support of this proposition, such arguments

held liable under the doctrine of responde-at superior for the CMS nurses' negligence; rather, Zegar must be personally at fault. *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1390 (7th Cir.1984) ("The common law does not hold a superior strictly liable for the torts of the employees she supervises."); *Northrop v. Lopatka,* 242 Ill.App.3d 1, 182 Ill.Dec. 937, 610 N.E.2d 806, 810 (1993) ("The common law does not impose strict liability on an employee who is merely the supervisor, but not the employer, of the employee who commits the tort."). However, Zegar's alleged failure to train and supervise the CMS nurses is fault directly attributable to Zegar. *McKinnon,* 750 F.2d at 1391. Illinois law recognizes that an agent may be held liable for failing to supervise another agent. *Northrop,* 182 Ill.Dec. 937, 610 N.E.2d at 810 (quoting § 358(1) of the Restatement (Second) of Agency, which provides that "[t]he agent of a disclosed or partially disclosed principal is not subject to liability for the conduct of other agents unless he is at fault in appointing, supervising, or cooperating with them.").

■ Further, Plaintiffs' evidence raises a genuine issue of material fact as to whether Zegar had a duty to train and supervise the CMS nurses. Zegar makes much of the fact that none of the Plaintiffs' experts definitively placed the responsibility for training or supervising the CMS nurses upon her. However, the expert witnesses' lack of familiarity with the Jail's medical hierarchy is not fatal to Plaintiffs' claim. Particularly here, where CMS's Kane County Jail Health Services Policy and Procedure Manual (the "Manual") defines Zegar's Health Services Administrator position as the "chief on-site administrative manager responsible for the delivery of contract services, supervi-sion of personnel and liaison services within the institution." The Manual charges that Zegar is "accountable for site health-care staff" and expects that Zegar will "[d]irect and supervise the day-to-day activities of [sic] Health Service Unit and assigned staff." We find that this evidence is sufficient to raise a question as to whether Zegar had a duty to train and supervise the CMS nurses.

Moreover, Plaintiffs have introduced sufficient evidence of breach and causation to withstand Zegar's challenge. Nurse Ann Hendrick testified that she did not believe the attending nurses were properly trained as to the significance of certain symptoms and when a physician should be contacted. Hendrick explained that competently trained and supervised nurses would not have delayed medical treatment for a patient with Ms. Hare's symptoms and well-documented medical history.

Similarly, Dr. John Raba testified that the nurses were unfamiliar with the signs of severe illness, liver disease in particular, and that "[i]f that responsibility [to train the nurses] falls to the supervisor of the nurses, so be it." These witnesses make clear that had the attending CMS nurses been properly supervised and trained, they would have immediately contacted Zegar or the Jail physician for emergency services. This quick action, in turn, could have prevented the fatal progression of Ms. Hare's liver failure.

Therefore, we deny Zegar motion for summary judgment as to Plaintiffs' remaining claims. Although the complaint is ambiguous, a liberal reading supports Plaintiffs' contention that their allegations put Zegar on notice of their failure to train and supervise claims. The Court suggests, however, that Plaintiffs' counsel re-

have succeeded. *See, e.g., Rogers v. State of Ala. Dep't of Mental Health and Mental Retardation,* 825 F.Supp. 986 (N.D.Ala.1993). In *Rogers,* however, the court determined that the failure to train, hire, and supervise claims were thinly veiled attempts to circumvent the rule barring respondeat superior liability pri-marily because the defendants did not have a duty to train, hire, or supervise those directly responsible. As discussed below, Plaintiffs have introduced evidence that Zegar had a duty to train and supervise the CMS nurses, distinguishing the instant case from *Rogers.*

draft the complaint to more fully incorporate these claims upon reinstatement in state court.

## CONCLUSION

Accepting all of Plaintiffs' allegations as true, we agree that Ms. Hare received woefully inadequate medical attention prior to her tragic death. Plaintiffs' specific attempts to hold these defendants liable, however, simply do not warrant relief in this forum. Plaintiffs cannot recover against Sheriff Ramsey under § 1983 for his deputies' conduct. In addition, although Plaintiffs' evidence fails to support liability for Nurse Zegar's direct treatment of Ms. Hare, Plaintiffs have raised a genuine issue as to whether Zegar breached her duty to properly train and supervise the attending CMS staff. Having dismissed the § 1983 claim—the only claim over which we have original jurisdiction—we decline to retain jurisdiction over Plaintiffs' surviving claims. Therefore, we grant Ramsey's motions for summary judgment in its entirety; Zegar's motion for summary judgment is granted in part and denied in part; and we dismiss all surviving state law claims without prejudice to their reinstatement in state court.