**Roy L. COFIELD and Rita F. Cofield, Plaintiffs,**

v.

**RANDOLPH COUNTY COMMISSION; Randolph County Sheriff's Department; Ricky Hancock; Danny Belyeu Chevrolet, Inc.; Danny Belyeu, individually and in his capacity as President of Danny Belyeu Chevrolet, Inc.; Scott Evans, an employee of Danny Belyeu Chevrolet, Inc. and/or Danny Belyeu; and Fictitious Party Defendant A, B, or C, Defendants.**

Civ. A. No. 93–D–612–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Dec. 30, 1994.

See also, 844 F.Supp. 1499.

Carolyn P. Cassey, Heflin, AL, Steven F. Schmitt and John Garland Smith, Tallassee, AL, for plaintiffs.

William R. Chandler, Bart Gregory Harmon, and Kendrick E. Webb, Montgomery, AL, for Ricky Hancock.

James A. Rives and Gerald C. Swann, Jr., Montgomery, AL, for remaining defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

The above-styled cause is before the court on Defendant Ricky Hancock's Motion for Summary Judgment, filed September 21, 1994. Defendant's Motion for Summary Judgment was accompanied by a supporting brief. For reasons articulated below, the court finds that Ricky Hancock's Motion for Summary Judgment is due to be granted in part. In light of the court's granting of partial summary judgment on behalf of Defendant Hancock, the court finds that the remainder of the action is due to be dismissed without prejudice.

### Jurisdiction & Venue

This court may assert subject matter jurisdiction in the above-styled cause because Plaintiffs allege violations of 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 1331, "[t]he district courts have original jurisdiction of all civil actions arising under.... the laws.... of the United States." In addition, Plaintiffs allege a number of state law violations including breach of contract, negligence, negligent failure to supervise, conversion, outrage, and § 6–5–370 *Alabama Code*, (1975). This court may exercise supplemental jurisdiction over the above claims because they are related to the claim over which this court may assert original jurisdiction. *See* 28 U.S.C. § 1367. Personal jurisdiction and venue are not contested.

### Facts/Contentions

Although many disagreements exist as to the exact facts surrounding this action, the court finds that the dispositive facts are not controverted. On July 16, 1992, Roy and Rita Cofield (hereinafter the "Plaintiffs") purchased a 1992 Chevrolet Blazer from Defendant Danny Belyeu Chevrolet, Inc. (hereinafter "Belyeu Chevrolet") for twenty-three thousand, four hundred thirty-three dollars ($23,433.00). As part of the purchase price, the Cofields traded a 1991 Mitsubishi Mirage, a 1975 Ford pick-up truck and a Holiday travel trailer.

On July 17, 1992, Defendants Scott Evans (hereinafter "Evans"), General Manager of Belyeu Chevrolet, and Randolph County Deputy Sheriff Ricky Hancock drove onto the premises of Roy and Rita Cofield. While on Plaintiffs' premises, a third person, John Bullock, "repossessed" and drove away in the Chevrolet Blazer purchased by Plaintiffs on the previous day. The Blazer contained certain of the Cofields' personal property including Roy Cofield's wallet, in excess of $9,400.00 in cash, documents relating to the purchase of the Blazer and radio equipment.

Plaintiffs claim that Defendants Evans and Hancock stated that Plaintiffs were three months behind in their payments on the Blazer and "we have just repossessed your car." Plaintiffs contend that they asserted that this was not possible because Plaintiffs

purchased the vehicle on the previous day. The Cofields also allege that when they questioned Hancock about the proper paperwork Hancock replied that papers were not needed and were just a waste of time.

Hancock asserts that he accompanied Evans to the Cofields' residence in an effort to keep the peace. It is undisputed that Hancock was dispatched to meet Evans at the Micaville crossroads in Randolph County on Friday, July 17, 1992. This meeting represented Hancock's first ever contact with Evans. Upon arrival, Hancock claims that Evans told him that he wanted Hancock to accompany him to the Cofields' residence to talk with Roy Cofield because there was a problem regarding the serial/identification number of the camper traded in by the Cofields. Hancock contends that he requested to see Evans' paperwork in order to determine whether the subject Blazer could be lawfully taken.

Following this exchange, Hancock states that Evans handed him a folder containing several documents concerning the sale and exchange of the vehicles at issue. In his deposition, Hancock asserted that no writ of execution was found among the documents presented to him by Evans. Hancock states that he told Evans that the Blazer could not be taken. According to Hancock, Evans then stated that he merely wanted to talk to Roy Cofield about the problem surrounding the serial/identification number of the camper in an effort to resolve the problem. Evans then allegedly stated that he wanted Hancock to accompany him to the Cofields' because Roy Cofield carried a pistol and that he (Evans) was afraid to go to the Cofields' without Hancock because there might be trouble. Hancock claims that he agreed to accompany Evans but if the Cofields requested their departure, they would have to leave. Hancock claims that he then trailed Evans to the Cofields' residence.

Once at the Cofield's residence, Deputy Hancock and Evans went onto the porch of the Cofields' home. While Hancock and Evans were on the porch, an John Bullock, an individual associated with Belyeu Chevrolet, started the engine of the Blazer and proceeded to leave the driveway. Deputy Hancock admitted that he did nothing to prevent the taking of the vehicle. Furthermore, Hancock did not radio the dispatcher or anyone else to intercept the Blazer.

Hancock asserts that he did not act because during this time Roy Cofield had come to the door and Cofield and Evans had begun arguing. Deputy Hancock contends that he did not pursue the vehicle because he did not want the verbal altercation between Roy Cofield and Evans to result in physical injury. Hancock asserts that he felt there was no time to act on the taking of the vehicle. Deputy Hancock also claims that he had no idea that the vehicle would taken from the plaintiffs' premises. Once Evans left the porch, Hancock claims that he told Roy Cofield that he did not know what was happening but Belyeu Chevrolet "needed to get it taken care of."

Evans claims that he informed Hancock that he (Evans) planned to repossess the vehicle purchased by the Cofields on the previous day. Evans also contends that Hancock did not request to see any paperwork; however, Evans asserts that he showed Hancock some documents pertaining to the transaction which occurred the previous day. Evans also stated that while on the Cofields' premises, the Cofields accused Evans and Belyeu Chevrolet of stealing their Blazer. Evans also claims that Hancock told Cofield that the vehicle was not being stolen but merely taken back to the dealership to straighten out the deal. Evans also states that Roy Cofield pursued him to his car and Hancock stepped in to calm Roy Cofield.

Plaintiffs claim that Hancock actually colluded with Evans in the repossession of Plaintiffs' Blazer. The Cofields allege that when Roy Cofield asked what was happening, Hancock stated that he and Evans repossessed the Cofields' vehicle. Hancock denies making this statement.

On May 12, 1993, Plaintiffs filed the above-styled action against Belyeu Chevrolet, Danny Belyeu, Evans, Hancock, the Randolph County Commission and the Randolph County Sheriff's Department. Subsequent to the filing of the complaint, the Randolph County commission and the Randolph County Sher-

iff's Department were dismissed from this action. Plaintiffs alleged the following counts against Defendant Hancock: a violation of 42 U.S.C. § 1983; trespass; negligence or wantonness; negligent failure to supervise; conversion; outrage; and a claim under § 6–5–370 Code of Alabama (1975). Plaintiffs also brought several Alabama state law claims against Belyeu Chevrolet, Danny Belyeu, and Scott Evans. On September 21, 1994, Hancock filed the motion presently before the court claiming that he is entitled to qualified immunity on Plaintiffs' 42 U.S.C. § 1983 action and immunities under Alabama law on Plaintiffs' state law causes.

### Summary Judgment Standard

■ On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### Discussion and Analysis

Hancock asserts that he is entitled to qualified immunity as a matter of law because the actions complained of by the Cofields fell within his discretionary authority and he may not be found liable in his individual capacity for those actions. The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). According to the Supreme Court in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096.

The United States Eleventh Circuit Court of Appeals has established the following test when determining whether a government official is entitled to qualified immunity:

> 1. First, the official must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."
>
> 2. Should the defendant satisfy his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on part of the defendant official. The plaintiff satisfies this burden by sufficiently demonstrating that the official's actions "violated clearly established constitutional law."

*Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983).

An official satisfies the first element of the two-pronged *Zeigler* test and, shifts the burden to the plaintiff by demonstrating " . . . . 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his

duties and within the scope of his authority.'" *Rich*, 841 F.2d at 1563–64 (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir.1981)).[1]

Plaintiffs do not contend that Hancock was not acting within his discretionary authority on July 17, 1992. Therefore, the court must determine whether the Cofields have satisfied their burden by demonstrating that Hancock violated clearly established constitutional law.

In the present matter, Plaintiffs allege that Hancock's actions constituted an unreasonable seizure; thereby, violating section 1983. Specifically, Plaintiffs contend that their rights to be secure in their person, houses, papers and effects, and to be free from unreasonable searches and seizures were violated by Hancock when Hancock entered onto their property without legal right or cause to do so and assisted Belyeu Chevrolet in taking their Blazer.

■ In order for a right to be clearly established, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand what he is doing is wrong." *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Furthermore, the unlawfulness of the act must be apparent in light of pre-existing law. *See id.* The Eleventh Circuit has stated: "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993).

In the recent decision of *Rodgers v. Horsley*, 39 F.3d 308 (11th Cir.1994), the United States Eleventh Circuit Court of Appeals stated that "the question.... in all qualified immunity cases, is fact specific...." In *Horsley*, an involuntarily civilly committed patient who was allegedly raped at a hospital brought a section 1983 action against the director of the hospital and chief administrator of the admissions unit of the hospital for failure to provide her with adequate security and failure to adequately train and supervise subordinates. Mona Rodgers, the plaintiff in *Horsley*, was left alone for fifteen minutes in the hospital's smoking room, during which time she was allegedly raped. Mona Rodgers submitted evidence that several incidents of sexual conduct between patients had been reported, but the occurrences were rare. Rodgers was on close watch status when the alleged rape occurred.

The *Horsley* court stated that the question was not whether, in general, involuntarily committed patients have a legal interest under Amendment Fourteen to safe conditions, but rather,

> ".... in May 1991, was it clearly established in this circuit that it was unconstitutional for a mental institution to fail to supervise a patient for fifteen minutes in the smoking room, when she was on close watch status for a health problem, when the institution had some history of some "sexual contact" involving patients other than plaintiff but no history of rape in the past twelve years, where a previous patient who was to be similarly monitored disappeared, apparently escaped through a bathroom window, and fell to her death ...?"

*Horsley*, 39 F.3d at 311. The Horsley court answered the foregoing question in the negative and held that the defendants were entitled to qualified immunity.[2] *Id.*

■ Applying the fact specific test of *Horsley* to the matter before it, the court finds that Deputy Sheriff Ricky Hancock is entitled to qualified immunity. Hancock asserts (and Plaintiffs do not offer any evidence to the contrary) that he was merely keeping the peace when he was dispatched to render assistance to Evans. Plaintiffs have produced mere allegations that Hancock did not behave in good faith when he visited the Cofields' residence on July 17, 1994. Moreover, Plaintiffs do not allege that Hancock's

---

1. The United States Eleventh Circuit Court of Appeals has adopted as precedent the decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*).

2. In Horsley, Mona Rodgers relied on *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), which held that involuntarily committed patients had a right to reasonably safe conditions of confinement.

specific actions violated clearly established constitutional law. The Cofields only produce a Supreme Court case which states that property is seized under the Fourth Amendment when "there is some meaningful interference with an individual's possessory interest in that property." *U.S. v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). *Jacobsen* involved a criminal action concerning the seizure of cocaine in which the United Supreme Court found for the government. The case at bar is a civil action regarding the removal of personal property.

The court finds that Plaintiffs have failed to comply with the fact specific requirement set forth in *Horsley,* as Plaintiffs produce no Eleventh Circuit precedent which holds that a law enforcement officer violates a federal constitutional or statutory law when such officer is acting to maintain peace in a civil dispute and fails to prevent the "repossession" of personal property. The court also notes that Roy Cofield threatened to physically harm Evans and that both Evans and Hancock claim that Hancock told Roy Cofield that the vehicle would be returned once the dispute regarding the serial number was rectified. The court finds that under the circumstances Deputy Sheriff Hancock acted reasonably in preventing a physical confrontation between Roy Cofield and Evans.

### Conclusion

Given that Plaintiffs do not assert an actionable claim under 42 U.S.C. § 1983 or any other constitutional or statutory provision, the Court finds that it must dismiss this action as it can not properly assert subject matter jurisdiction over the remaining causes of action. The only viable actions in this cause concern alleged violations of Alabama state law by Defendants Ricky Hancock, Danny Belyeu, Scott Evans, Belyeu Chevrolet. Given that Plaintiffs and Hancock are resident citizens of Alabama, this action now involves nondiverse citizens, with no implication of federal law. Therefore, the court finds that this action is due to be *dismissed without prejudice* for want of subject matter jurisdiction.[3]

A judgment in accordance with this memorandum opinion shall be entered separately.

### JUDGMENT

In accordance with the attached memorandum opinion and Rule 58 of the *Federal Rules of Civil Procedure,* it is CONSIDERED, ORDERED, and ADJUDGED that summary judgment on the plaintiffs' 42 U.S.C. § 1983 claim be and the same is hereby GRANTED in favor of Defendant, Deputy Sheriff Ricky Hancock. It is further

CONSIDERED, ORDERED, and ADJUDGED that the above-styled action as to Plaintiffs' Alabama state law claims against Deputy Sheriff Ricky Hancock, Danny Belyeu, Scott Evans, and Danny Belyeu Chevrolet, Inc. be and the same is hereby DISMISSED, *without prejudice,* for lack of subject matter jurisdiction of said claims. It is further

CONSIDERED and ORDERED that all costs herein incurred be and the same are hereby taxed against Plaintiffs, Roy and Rita Cofield, for which let execution issue.

---

**3.** This court may validly assert jurisdiction over pendent state law claims when such claims "are so related to claims" brought under the original jurisdiction of this court. 28 U.S.C. § 1367(a). However, the court has found that Deputy Sheriff Hancock is entitled to qualified immunity and the 42 U.S.C. § 1983 cause is not actionable. As a result, the only remaining issues are those arising under Alabama law. Therefore, this court may not adjudicate this action. However, the court notes that Plaintiffs may now seek to bring their action in the Circuit Court of Randolph County, Alabama in order to avail themselves to appropriate remedies, if any are merited.