Patricia COLEY, As Administratrix of the Estate of Ronnie Dudley, and individually as sister and personal representative of Ronnie Dudley, deceased, Plaintiff,

v.

Gloria CASTILLO, M.D., Defendant.

No. 5:98–CV–436–2–(WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 29, 2000.

Jason K. Priebe, J. Allen Lawson, Macon, GA, Charles E. Cox, Jr., Macon, GA, for Plaintiff.

Patricia Downing, Atlanta, GA, Bruce M. Edenfield, Atlanta, GA, for Defendants.

## ORDER

OWENS, District Judge.

### I Procedural and Factual History

Before the court is Defendant's Motion for Summary Judgment and brief in support of the motion. [Tabs # 31,32]. For the reasons set forth more fully below,

**1384**

Defendant's Motion for Summary Judgment is granted.

Plaintiff filed her complaint in this matter alleging that Defendant is responsible for her brother, Ronnie Dudley's, death at the hands of Richard Hailey, while both men were patients at the Central State Hospital under Defendant's care.[1] The Defendant was the physician for both men while they were in the same building at Central State. Defendant moved for summary judgment on two grounds: (1) that, based on relevant caselaw, there is no evidence in the record that she acted with deliberate indifference with regard to the care of patients Ronnie Dudley or Richard Hailey; and (2) that, in light of no clear constitutional violations, Defendant is entitled to qualified immunity as to Plaintiff's allegations in her complaint.

The following is an account of the facts as outlined in Defendant's Statement of Material Facts [Tab # 33], which Plaintiff does not dispute. *See* Pl.Resp. to Def.Mot. for Summ.J. at 2.

In November of 1996, Ronnie Dudley was a patient at Central State Hospital. Dudley, the deceased brother of Plaintiff, was strangled in his bed by another patient, Richard Hailey. Both men resided in the Freeman Building, where chronically ill and aggressive patients were located. Richard Hailey became a patient of Defendant's in May of 1996 when he was transferred from another ward to the ward on 4 East in the Freeman Building. Hailey had been admitted to the hospital for the sixth time on May 3, 1995. The admission summary showed a long history of psychological problems with Hailey. Before he was moved to the Freeman Building, Hailey was characterized by staff as one with a short attention span, quite easily agitated, psychically aggressive, threatening, hostile and uncooperative. *See generally* Lazarus Aff. Hailey had been transferred to the Freeman building because, there, patients were provided long-term care for mental illnesses with a history of acting

out aggressively toward themselves and others. *See* Castillo Aff. at 2.

From the first day in the new ward, Hailey exhibited troubled and aggressive behavior. *Id.* Hailey demonstrated a threatening temperament in many different ways: he was placed into 5–point restraints on numerous occasions; was given pharmacological treatment; and, suffered from maladaptive behavior, aggressive, impulsive behavior and attention-seeking behavior. *See generally* Lazarus Aff. On different occasions, Hailey shoved one patient and attempted to choke another. For this type of behavior, Hailey was placed in seclusion and restraints repeatedly. *Id.*

On the morning before Hailey killed Dudley, Hailey had an altercation with a staff member of the hospital. Hailey informed the staff member that he was going to kill someone in order to go to the Binion Building. A nurse reported the threat to Defendant and told her of an escape attempt the night before. Defendant met with Hailey within the hour and noted no sign of further hostility or aggressiveness. While it was not unusual for Hailey to make threatening comments, they were normally directed at staff members when his needs were not being met. Defendant had never "carried out any actions in furtherance of his threats." *See* Castillo Aff. at 5–6. Defendant determined that Hailey was calm and decided he was not homicidal or suicidal. She believed Hailey was preoccupied with "smoking, going to the Binion Building and going to the library." *See* Castillo Aff. at 6. Defendant was only concerned about another escape attempt and ordered a watch on Hailey. Throughout the day, Defendant observed Hailey's behavior and believed he was having a "good" day. *Id.* at 7. Defendant left the hospital for the day at about 5 p.m., while Hailey was still in restraints.

---

**1.** In the original Complaint, Plaintiff alleged additional claims that have either been dismissed or remanded to the Superior Court of Baldwin County, Georgia.

After Hailey refused his normal medication that evening, he was given 50 mg. of Thorazine intramuscular pursuant to a standing physician's order. *See* Trawick Dep. at 15–16. At 8:15 p.m., Hailey appeared calm and was released from his restraints. While Defendant was off-duty at this time, there was an on-duty physician who could have been called if Hailey had any more outbursts. Hailey was observed through the night, approximately every two hours, and was found asleep every time, even on the last check at 4:30 a.m. *See* Butts Dep. at 29, 32. At 5:45 a.m. on November 8, 1996, Wyman Grief, a staff member of the hospital, attempted to wake Dudley but was unsuccessful. *See* Grier Dep. at 23–24. Dudley could not be resuscitated and was declared dead at 6:25 a.m. Hailey confessed to killing Dudley by tying a sheet to one side of the bed, draping it across Dudley's neck and strangling him. *See* Lazarus Aff. at notes 0003348–0003349.

## II Contentions

Plaintiff contends that when Defendant did nothing more than meet with Hailey and make an assessment of his attitude and demeanor after he threatened to kill someone, Defendant's conduct fell below the standard of care for a physician in similar circumstances. Plaintiff argues that Defendant should have taken further steps to assure Dudley's safety and that the failure to do so was a violation of Dudley's constitutional rights under the Eight and Fourteenth Amendments.

Defendant contends that her acts or omissions did not violate any constitutional rights as construed under 42 U.S.C. § 1983. Further, Defendant argues that she is entitled to qualified immunity for all of Plaintiff's claims.

## III Summary Judgment Standard

Summary Judgment is appropriate only when the pleadings, depositions and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, if the Defendant presents evidence sufficient to show that there are no material facts in dispute with regard to the elements of her two defenses [2], she is entitled to judgment as a matter of law.

## IV Discussion

■ Defendant asserts that Plaintiff has not met her burden of proving any violation of Ronnie Dudley's rights under 42 U.S.C. § 1983. Alternatively, Defendant argues that Plaintiff's claims are barred by the doctrine of qualified immunity. "Once the qualified immunity defense is raised, the plaintiff bears the burden of showing that the federal 'rights' allegedly violated were clearly established." *Rodgers v. Horsley*, 39 F.3d 308, 310 (11th Cir.1994) (citing *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir.1989)). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what [she] is doing violates that right." *Id.* When a court looks at whether "the law applicable to certain facts is clearly established," the facts of the authoritative cases

---

**2.** First, that Defendant did not act with deliberate indifference in regard to Plaintiff's deceased brother. Second, that Defendant is entitled to qualified immunity as to any Plaintiff's claims.

are important. *Id.* However, the facts need not be exactly the same as the facts of the immediate case, only material similar. *Id.* These standards are important in cases such as the one at bar where conditions of confinement with a state entity are at issue. The majority of the caselaw on the subject deals with prison conditions. As the above guidelines suggest, however, that caselaw is applicable to this case.

### A. Plaintiff's Constitutional Claims under 42 U.S.C. § 1983

While a patient does have a recognized liberty interest in the safety or his or her environment that is protected by the due process clause of the Fourteenth Amendment, claims involving conditions of confinement have been analyzed under the "deliberate indifference standard" in caselaw interpreting the Eighth Amendment. *See Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982) (patient has a liberty interest in the safety of their environment through the 14th Amendment); *Taylor v. Ledbetter,* 818 F.2d 791, 797 (11th Cir.1987) (discusses deliberate indifference claims against state officials). Thus, whether Defendant violated Dudley's constitutional rights under the Fourteenth and Eighth Amendments is analyzed using the deliberate indifference standard applied to government officials, such as Defendant who is a physician at a state mental hospital.

■ The Supreme Court has determined that the deliberate indifference standard requires a subjective mental intent by the defendant, in the absence of which, there is no constitutional violation. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). When someone has been harmed while in a state institution, officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. An official's duty under the Eighth Amendment is to ensure reasonable safety. *Id.* at 844, 114 S.Ct. 1970. While *Farmer* involved a prison inmate situation, the le-

gal standard is closely analogous to the case at bar.

The evidence in the record indicates that the Defendant in this case responded in what she believed was the best way possible to Hailey's verbal threat. *See* Castillo Aff. at 6. In her professional, medical judgment, Hailey was "not homicidal or suicidal" after she spoke with him face-to-face following his threat. *Id.* This threat did not seem any different from any other time Hailey had acted like a child by verbally abusing the staff. *Id.*

The Eleventh Circuit has decided that "in light of *Farmer,* liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of an 'excessive risk to inmate health or safety' and disregarded that risk." *Campbell v. Sikes,* 169 F.3d 1353, 1364, (11th Cir.1999). It is insufficient for the plaintiff to merely show "that the defendant should have perceived the risk but did not." *Id.* In *Campbell,* a prisoner brought a § 1983 claim against prison officials and mental health personnel alleging deliberate indifference to her medical needs and excessive force. The court in *Campbell* held that, among others, two important questions to analyze were (1) whether the prison psychiatrist in that case actually knew of 'an excessive risk to inmate health or safety' and (2) whether the official disregarded that risk. *Id.*

■ In this case, there is evidence that Defendant had no knowledge that Hailey was an "excessive risk" to Dudley. She spoke with Hailey and determined he was merely acting out as was his usual practice. She did not think he was a danger to himself or others as shown by her decision to not place him on any observation level beyond the escape precautions. *See* Castillo Aff. at 6. After examining the record in this case, another physician stated that, under the circumstances, he did not see any need to have taken special precautions with Hailey. *See* Tardiff Aff. at 7. Another physician, who was actually called by the Plaintiff, Dr. Richard Elliot, stated in his

affidavit that he thought Defendant should have placed Hailey under a behavioral management plan after his verbal threat.[3] *See* Elliot Dep. at 41–48. Even Dr. Elliot, though, stated that he did not think Defendant's decision regarding Hailey fell to a deliberate indifference standard. *Id.* at 106.

In the *Youngberg* case above, the Court held that decisions by the appropriate medical professionals are entitled to a presumption of correctness. *Youngberg,* 457 at 324, 102 S.Ct. 2452. Plaintiff argues that Defendant failed to protect Dudley by not restraining Hailey or implementing a treatment program for him. While the treatment program has already been addressed, the restraint issue was analyzed in *Youngberg* which also dealt with a state mental institution. The Court there found that hospital personnel "may not restrain residents except when and to the extent professional judgment deems this necessary to assure such safety" of themselves or others. *Id.* The Court balanced the need for safety in mental institutions with the constitutional rights of the restrained. The Court focused on the need for physician autonomy when making day-to-day decisions about patients in these circumstances. The Court recognized that it was not their place to step in and analyze every decision by a doctor in these matters. "The administrators, and particularly professional personnel, should not be required to make each decision in the shadow of an action for damages." *Id.* at 324–325, 102 S.Ct. 2452. The affidavits of Drs. Michael Hilton and Kenneth Tardiff indicate support for the Defendant's decisions regarding Hailey in light of her experience with Hailey over a period of six months of observation. *See* Hilton Aff. at 5–10; Tardiff Aff. at 5–11. In his deposition, Dr. James Sikes stated that he did not see any way the Defendant could have predicted Hailey killing Dudley because there was "just nothing different" about his threat on

November 7 than any other time Hailey had acted out without following up on his threats. *See* Sikes Dep. at 48.

In light of the above evidence, the Defendant's judgment call on deciding not to restrain Hailey after his threat on the morning of November 7, 1996 is entitled to a presumption of correctness. There has been no evidence rebutting this presumption. Further, there is absolutely no evidence that the Defendant acted with deliberate indifference to either Hailey's threat or Dudley's safety. As a result, Plaintiff's § 1983 claims are meritless.

**B. Qualified Immunity**

■ As the Defendant was performing a discretionary function when she decided not to further restrain Hailey, the Plaintiff must show that the Defendant violated "what were, in the circumstances, [Dudley's] clearly established federal rights and that every reasonable government official in a similar position would have known that defendants' acts were unlawful." *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 817–819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). As discussed above, there were no constitutional rights violated in this case. The actions of the Defendant were presumptively correct in the absence of a showing of deliberate indifference toward her patients' needs. Therefore, the Defendant is entitled to qualified immunity as to Plaintiff's claims in this case.

**V. Conclusion**

As Plaintiff has failed to show through the record as a whole that (1) Defendant violated any rights Dudley had as a patient in a state mental hospital or (2) that Defendant is not entitled to qualified immunity, Defendant is entitled to judgment as a matter of law. Defendant's Motion for

---

**3.** Dr. Kenneth Tardiff stated in his Deposition that he did not feel this would have prevented Hailey from killing Dudley as the killing, by carefully waiting until the last bed was

checked to attack Dudley, was an act of stealth and not the result of an impulse-control disorder. *See* Tardiff Aff. at 11.

**1388**

Summary Judgment is hereby **GRANTED** in its entirety.