Ulysses LIGHTNER, Plaintiff,

v.

TOWN OF ARITON, ALABAMA; Billy Clyde Herring, individually and in his capacity as Mayor for the City of Ariton; Randy O. Laney, individually and in his capacity as Mayor for the city of Ariton, Defendants.

Civ. A. No. 94–D–1198–S.

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 17, 1995.

Kenneth C. Sheets, Jr., Dothan, AL, for plaintiff.

William H. Filmore, Henry B. Steagall, III, Ozark, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

This matter is before the court on the Defendants' motion for summary judgment accompanied by supporting brief, exhibits and affidavits, filed April 17, 1995. The plaintiff, Ulysses Lightner (the "Plaintiff" or "Lightner") filed a response, supported by brief and an affidavit, in opposition thereto on May 4, 1995. After carefully considering counsels' arguments, relevant statutory and case law and the record as a whole, the court finds that the Defendants' motion is due to be granted in part and denied in part.

### JURISDICTION

Jurisdiction is proper as Plaintiff alleges violations of 42 U.S.C. §§ 1981 and 1983.[1]

See 28 U.S.C. § 1331. Plaintiff also brings an action under the common law tort of outrage. The court asserts supplemental jurisdiction over this claim. 28 U.S.C. § 1367. Personal jurisdiction and venue are uncontested.

### FACTS

Ulysses Lightner (hereinafter "Lightner" or "Plaintiff") was employed by the Town of Ariton's (hereinafter "Ariton") police department from May 7, 1990, to January 18, 1994. Apparently, Plaintiff held several positions, including acting police chief, during his tenure. During the later stages of his employment and after serving as acting police chief, Plaintiff was reassigned to an office position, in which he was allegedly required to execute his assignments in a room with inadequate lighting. Plaintiff contends that during his tenure as police chief, he was promised additional compensation but he never received it. Plaintiff avers that he received less pay than the current police chief and the police chief who preceded him—both of whom are white. Lightner further contends that during his tenure as Police Chief, the current mayor, Billy Clyde Herring (hereafter "Herring"), usurped Plaintiff's authority by setting work shifts and purchasing supplies. According to Plaintiff, these duties are now performed by the current Chief of Police.

While purportedly serving as police chief, Plaintiff was allegedly required to serve on patrol tours, whereas the newly appointed white police chief is not so required. Subsequently, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (hereafter the "EEOC"). Plaintiff was later released from his employment.

Lightner alleges that he was the victim of invidious discrimination in the terms and conditions of his employment. Lightner also claims that his discharge was a retaliatory response to his filing an EEOC claim. Plain-

---

1. This action was originally filed in this court pursuant to alleged violations of 42 U.S.C. §§ 1981, 1983 and 2000e et seq. The court, in its order dated March 27, 1995, dismissed plaintiff's 42 U.S.C. § 2000e et seq. claim for failure to state a claim upon which relief may be granted.

The court found that Defendant Town of Ariton lacked employer status under Title VII because it employed only seven (7) persons during the relevant period, while the minimum under Title VII is fifteen (15). See 42 U.S.C. § 2000e(b).

tiff now avers that since his discharge, he has been harassed on several occasions by the Ariton Police Department at his home during the evening hours.

Plaintiff claims that the alleged acts represent a discriminatory pattern and practice by Ariton and its agents, Herring and Randy O. Laney (hereinafter "Laney"), in violation of 42 U.S.C. §§ 1981, 1983 and 2000e *et seq.* Plaintiff avers that as a result of the alleged acts he has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, great expense, embarrassment and damage to his reputation.

In their motion for summary judgment, the Defendants assert the following: (1) that the majority of Lightner's claims are associated with retaliation, and that retaliation is not actionable under 42 U.S.C. §§ 1981 and 1983; (2) that it is questionable whether the actions giving rise to Plaintiff's action constitute intentional conduct, which is necessary to prevail under § 1981 or § 1983; (3) that in order to hold the Town of Ariton ("Ariton") responsible for its employees and/or agents, the plaintiff must show that his injuries are the direct result of the City's official policies and/or custom(s); (4) that Lightner's equal protection arguments must fail because he was not Ariton's chief of police and, therefore, was not similarly situated to other police chiefs; and (5) that the mayors are entitled to qualified immunity for claims against them in their individual capacities because they were performing discretionary functions in discharging the acts in question.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. *See also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

## DISCUSSION

### I. Section 1981

Section 1981 prohibits race discrimination in making and enforcing contracts and is a statutory remedy available in both private and public sectors.[2] *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). Prior to the 1991 amendments to the Civil Rights Act of 1964, the United Stated States Supreme Court narrowly construed the right "to make and enforce contracts" clause of section 1981(a). In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Court held that section 1981 "covers conduct only at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Thus, conduct affecting "the terms and conditions of continuing employment" was not actionable. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1160 (11th Cir.1993) (quoting *Patterson*, 491 U.S. at 179, 109 S.Ct. at 2374).

In 1991, the Civil Rights Act (hereafter the "Act") was amended, expanding the coverage of 42 U.S.C. § 1981 to include claims of racial discrimination based upon wrongful termination. Pub.L. No. 102–166, S. 1745, 102d Cong., 1st Sess. (1991). (Congress passed the Act on November 7, 1991, which was signed into law on November 21, 1991, by former President George Bush.) The Act effectively reverses *Patterson* and its progeny and now permits claims for intentional racial discrimination in ". . . the making, performance, modification, and termination of [employment] contracts," as well as ". . . the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Hence, the Act maximizes the overlap between Title VII and § 1981 and allows an aggrieved party alleging intentional discrimination to alternatively seek recourse under both statutes.[3]

The Defendants argue that the bulk of plaintiff's claim is couched in retaliation which is not actionable under § 1981. However, retaliation is not the sole basis of Plaintiff's complaint, as Plaintiff also contends that he was subjected to racially disparate treatment. In addition as heretofore articulated, section 1981 now provides relief for conduct occurring after the employment contract is formed.

Defendants claim that Title VII provides the only recourse to a plaintiff seeking redress for retaliatory employment actions. This is not a precise recitation of the law. As the *Johnson* Court stated:

> Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not limited to Title VII in his search for relief. '[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other ap-

2. 42 U.S.C. § 1981 provides in relevant part: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

3. The court notes that suits for racial discrimination predicated on § 1981 will continue to be favored over Title VII. Compensation for compensatory and punitive damages is not capped if the employee-plaintiff circumvents Title VII's ad-

ministrative mechanisms, which encourage reconciliation without a lawsuit. *See* 42 U.S.C. § 1981a(b)(3), which caps damages available under Title VII from $50,000 to $300,000, depending upon the size of the employer's workforce; *See also id.* at (b)(4), which specifically states that "[n]othing in this section shall be construed to limit the scope of, or the relief available under [§ 1981]."

plicable state and federal statutes.' (citations omitted). In particular, Congress noted 'that the remedies available to the individual under the provisions under Title VII are co-extensive with the indiv[i]dual's [sic] right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and that the two procedures augment each other and are not mutually exclusive' (citation omitted). Later, in considering the Equal Employment Opportunity Act of 1972, the Senate rejected an amendment which would have deprived a claimant of any right to sue under § 1981. 118 Cong.Rec. 3371–3373 (1972).

*Johnson,* 421 U.S. at 459; 95 S.Ct. at 1719–20.

## A. Retaliatory Discharge

■■■ The crux of Ariton's contention is that claims grounded in retaliatory conduct are not actionable under section 1981. In light of the expanded grasp of § 1981, this proposition is untenable, if the alleged retaliation was, in essence, a discriminatory response which affected the making, performance, modification and/or termination of Lightner's employment.

■■■ Defendants argue in the alternative that even if Plaintiff's retaliation claim is actionable, he must prove intentional discrimination in order to prevail on his § 1981 retaliation claim. Defendants are correct. *See General Building Contractors Associa-*

*tion v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Washington v. Davis,* 426 U.S. 229, 239, 247–48, 96 S.Ct. 2040, 2047, 2051, 48 L.Ed.2d 597 (1976). Absent direct evidence of discrimination, a plaintiff seeking redress under section 1981 for retaliatory discharge may raise a presumption of unlawful treatment by constructing a prima facie case of impermissible retaliatory treatment. A plaintiff establishes a prima facie case of unlawful retaliatory treatment by demonstrating: (1) statutorily protected participation; (2) adverse employment action; and (3) a causal relationship between the two. *Irby v. Sullivan,* 737 F.2d 1418, 1425 (5th Cir.1984); *Greenwood v. Ross,* 778 F.2d 448 (8th Cir.1985). Once a plaintiff constructs a prima facie case of retaliatory discharge, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the discharge. *Irby,* 737 F.2d at 1426; *Greenwood,* 778 F.2d at 456.

Defendants do not deny that Lightner filed an EEOC complaint. Subsequently, Ariton released Plaintiff from its police force. Plaintiff filed his EEOC complaint on August 23, 1993, and by written notification, dated January 18, 1994, Ariton terminated Lightner.[4]

Defendants submit evidence that Plaintiff neglected to leave the radio in the patrol car tuned to an incorrect channel on four separate occasions. Lewis Memo. to Lightner,

---

4. In correspondence styled "Specifics of Termination," Laney articulated the following concerning Lightner's professional deficiencies:
 1. Failure to notify dispatcher ... when ... on call.
 Failure to follow proper procedure 11/9/93 regarding a stolen car that was wrecked and abandoned ...
 Leaving a stranded motorist on the side of the road in freezing temperatures before the Coffee County Sheriff Department could arrive to transport.
 Failure to maintain assigned vehicle properly. Falsifying maintenance logs.
 2. Consistently not discussing police business with supervisor.
 Constantly taking problems to the mayor and council members individually rather than discussing with supervisor.
 Open defiance of departmental policy regarding checking in with dispatcher every hour.

Insubordination
 3. Not treating ... fellow workers in a courteous and professional manner. This created a hostile work environment.
 4. Having a "not [sic] caring attitude about the Ariton Police Department."
 Consistently going out of ... way to make a mockery departmental rules. Example on 1/14/94 around 7:05 p.m. ... refused to give dispatcher Trawick your location. Referenced a memo dated 1/7/94 that [Lightner] did not have to give location until 8:00 p.m. This shows a lack of respect for your job and department.
 A citizen complaint that was lodged against you in reference to ... shining a spotlight into their residence on more than one occasion. The citizen says this is a retaliation against them, because they filed a complaint against two of your sons.
Def. Ex. 14, p. 2.

Def.Ex. 5. According to Defendant's submissions, on June 12 1993, Plaintiff left work two hours earlier than the scheduled time without notifying the proper authority. On July 6, 1993, Lewis suspended Lightner for transporting a canine in a police cruiser, after express command not to. *See* Lewis Letter to Lightner, Def.Ex. 9.[5] Plaintiff has also been reprimanded for lack of dependability, nonadherence to department policy, non-cooperation, conduct detrimental to the Ariton police department, and unsatisfactory attitude. *See* Laney Letter to Lightner, Def.Ex. 10. In an evaluation covering October 1992 to October 1993, Laney concluded that Lightner's overall performance required improvement. Plaintiff objected to Laney's determination and stated that he believed that his performance effectively satisfied acceptable standards. Def.Ex. 11.

■■■■ The court finds that Defendant Ariton has articulated legitimate reasons for terminating plaintiff. However, it appears that the most severe criticism of and dissatisfaction with Lightner occurred within two months after Lightner filed an EEOC claim of discrimination. For instance, Mayor Laney issued the October 7, 1993, letter of reprimand barely over a month after Plaintiff filed his EEOC claim. Moreover, the October 1993 evaluation was submitted less than three months after the filing of the claim. Based on these circumstances, the court finds that Plaintiff has constructed a prima facie case of retaliation. Although assuming the truthfulness of Laney's letter of termination makes it a close call, at this juncture, the court concludes that the true reason for Plaintiff's termination should be determined by the trier of fact and that Defendants' motion for summary judgment is due to be denied on this issue.[6]

**5.** This was a two day suspension, from July 7 to July 9, 1993.

**6.** At this juncture, the court construes the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Moreover, the court's function at this point is not "to weigh the evidence and determine the truth of

**B. Disparate Treatment in Terms & Conditions of Employment**

■■■■ As stated previously, when alleging a violation of section 1981, the plaintiff must prove discriminatory intent. *See St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993); *see e.g. Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 771–72 (11th Cir.1982). The United States Eleventh Circuit Court of Appeals has held that absent direct evidence of discrimination, as is the case here, a section 1981 plaintiff may establish a prima facie case of intentional discrimination under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[7]

■■■■ Under the *McDonnell Douglas/Burdine* framework, a plaintiff must initially

> create an inference of discrimination by establishing a prima facie case. If he [or she] does so, the defendant must then "articulate some legitimate, nondiscriminatory reason for the [adverse employment action[s]." The plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions.

*Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir.1984) (citations omitted).

Plaintiff alleges that while serving as police chief he was not permitted to leave town to attend to personal affairs, but the subsequently appointed chief of police, Isaac Lewis (hereafter "Lewis"), who is white, is permitted to do so. Lightner also claims that when he was police chief he was required to wear his uniform while on duty, which allegedly, is

the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

**7.** In *Howard v. BP Oil Co., Inc.,* 32 F.3d 520 (11th Cir.1994), the court held that *McDonnell Douglas's* burden-shifting analysis applies to actions brought under section 1981.

not the case with Lewis. In addition, Plaintiff claims that Lewis has the option to work weekends, but he possessed no such option when he was police chief. Plaintiff also avers that, while he was police chief, Herring personally interfered with his duties by personally performing certain tasks, such as shift scheduling and supply purchasing, which purportedly have now been returned to the sole authority of the police chief. Finally, Plaintiff contends that he was required to serve patrol tours; however, Lewis is not burdened with this task.

Plaintiff asserts that former mayor Laney appointed him chief of police and assigned to him all duties incident thereto. Pl. dep., p. 159.[8] Contrarily, the Defendants contend that Plaintiff was only acting police chief until someone else was appointed to permanently fill the position. Plaintiff asserts that he was never told that he was serving only as acting police chief. *See* Lightner aff. Plaintiff also states that he was permitted to wear the chief of police badge and had all the duties commensurate thereto. *See id.*

■■■■ Lera Mae Williams (hereafter "Williams"), a member of Ariton's town council, asserts that Lightner only served as acting chief of police until Ariton found a permanent chief of police. Williams aff. It appears that Ariton attempts to make a distinction without any ostensible material difference. Whether actual police chief or acting police chief, Lightner served as Ariton's police chief for approximately seven months. Neither Herring nor any of the other defendants make a legitimate effort to articulate any legitimate nondiscriminatory justification for the alleged disparity in the terms and conditions of Plaintiff's employment. They simply allege that Plaintiff was only the acting police chief. Because Lewis is white and Ariton have not rebutted Plaintiff's proffer of discriminatory treatment, the court finds that Plaintiff has demonstrated a prima facie case of discrimination in the terms and conditions of his employment. However, notwithstanding this presumption of discrimination,

the Plaintiff bears the ultimate burden of proving that racial animus was the driving force behind the alleged disparate treatment. *See St. Mary's Honor Center supra.*

## II. Section 1983—Municipal Liability

### A. Retaliation

■■■■ Ariton contends that it is entitled to summary judgment on Plaintiff's section 1983 because retaliatory treatment cannot form the basis of an actionable section 1983 claim, as Title VII allegedly provides the exclusive remedy. It is long established that section 1983 does not create any substantive rights. *Irby,* 737 F.2d at 1427. Instead, it provides only a remedy for violation of rights secured by federal law. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979); *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). The United States Supreme Court has recognized two exceptions to the application of section 1983 to statutory violations. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). First, section 1983 does not afford a remedy for violations of a statute unless the statute creates a right secured by the United States within the meaning of section 1983. *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). Next, section 1983 is unavailable when the governing statute provides an exclusive remedy for violations of its terms. *Halderman,* 451 U.S. at 28, 101 S.Ct. at 1545 (quoting *Thiboutot,* 448 U.S. at 22 n. 11, 100 S.Ct. at 2514 n. 11 (Powell, J., dissenting)).

In *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct 2345, 60 L.Ed.2d 957 (1979), the Supreme Court examined the comprehensive remedial scheme embodied in Title VII, including its requirements for utilization of local and state remedies and the administrative procedures of the EEOC; express time limitations for

---

8. Lightner allegedly served as a police officer of Ariton from May 7, 1990, to May 4, 1991. Lightner aff. At that time, Lightner was named assistant police chief and he so served until Novem-ber 22, 1992. At which time he was named the police chief. *Id.* Plaintiff avers that he served as police chief until April 1, 1993. *Id.*

administrative and judicial filings; grant of conciliatory, investigatory and prosecutorial powers to the EEOC; and the specification of remedies, including attorneys' fees back pay, reinstatement, and other equitable remedies. *Id.* 442 U.S. at 373–75, 99 S.Ct. at 2349–50. The *Novotny* Court concluded that "[i]f a violation of Title VII could be asserted through § 1985(c), a plaintiff could avoid most if not all these detailed and specific provisions of the law." *Id.* at 375–76, 99 S.Ct. at 2350–51. Like section 1985, section 1983 provides no substantive rights. *See Irby,* 737 F.2d at 1429.

 Plaintiff does not clearly articulate the federal basis of his retaliation claim. It appears that Plaintiff's brings his claim pursuant to the anti-retaliation provision of Title VII.[9] Because Title VII provides the exclusive remedy in this context, the court finds that Plaintiff may maintain no action under section 1983 predicated on retaliation.

### B. Disparate Treatment

 A local governing body can be sued directly under section 1983 for monetary, declaratory or injunctive relief when the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body." *Monell v. Dept. of Social Services of New York City,* 436 U.S. 658, 690, 691, 98 S.Ct. 2018, 2035, 2036, 56 L.Ed.2d 611 (1978). Furthermore, local governing bodies may be sued for constitutional deprivations emanating from "custom" although such a custom is not the product of formal adoption via the

body's official decisionmaking regime.[10] As Justice Brennan stated: "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made among various alternatives" by local policymakers. *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986) (plurality). However, a section 1983 plaintiff cannot rely on a theory of respondeat superior to hold a city liable for the individual actions of its mayors and city councilmen. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Hearn v. City of Gainesville,* 688 F.2d 1328, 1334 (11th Cir. 1982). Neither can a municipality be held liable "solely because it employs a tortfeasor." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991) (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036). Therefore, in order to recover against a city or municipality, a plaintiff must demonstrate that the alleged constitutional deprivation occurred pursuant to a custom or policy of the municipality. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037; *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1503 (11th Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Hearn,* 688 F.2d at 1334.

 Officials who have "final policymaking" authority may, by their actions, subject the respective municipality to § 1983 liability. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (citing *Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298). The rationale is that if one has final policymaking authority that person's decisions are essentially the municipality's policy. *See Brown v. City of Fort*

---

9. Pursuant to 42 U.S.C. § 2000e–3:
 It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment ... because he has made a charge ... under this subchapter. 42 U.S.C. § 2000e–3(a).

10. In *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Court stated:
 Congress included customs and usages [in section 1983] because of the persistent and widespread discriminatory practices of state officials ... although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

*Adickes,* 398 U.S. at 167–68, 90 S.Ct. at 1613. Moreover, the United States Supreme Court has explained,
 "[i]t would be a narrow conception of jurisprudence to confine the notion of 'laws' to which is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice can establish what is state law ... Deeply embedded traditional ways of carrying out state policy ... are often tougher and truer law than the dead words of the written text."
*Nashville C. & St. Louis R. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940).

*Lauderdale,* 923 F.2d 1474, 1481 (11th Cir. 1991). Whether an official has final policymaking authority is a question of state law. *Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300. Therefore, it is not a question of federal law or a question of fact in the normal sense. *Praprotnik,* 485 U.S. at 124, 108 S.Ct. at 924–25.

■ Here, Plaintiff has neither shown nor alleged that anyone other than himself has been discriminated or retaliated against. Lightner avers that no one on the town counsel discriminated against him or treated him differently because of his race. *See* Pl. depo., p. 156. Instead, plaintiff avers that Mayor Herring intentionally discriminated against him because of his race. *See* Pl. aff. Therefore, it must be determined whether Mayor Herring or any other person having policymaking authority for Ariton exercised his or her authority in a racially discriminatory manner. If Mayor Herring possessed the final decisionmaking authority for the appointment of Ariton's chief of police, and his decision(s) concerning Lightner were induced by racial prejudice, then Ariton can be held liable for this conduct.

A board member testifies by affidavit that the mayor possesses this authority.[11] Therefore, the court concludes that a neutral nonpartisan trier of fact may find that the mayor of Ariton is responsible for the hiring and firing of its police chief; therefore, it may be liable for the discriminatory acts of Mayor Herring.

■ The equal protection clause provides "a right to be free from racial discrimination." *Busby,* 931 F.2d at 775 (citing *Washington v. Davis,* 426 U.S. at 239–41, 96 S.Ct. at 2047–48). In order to establish a violation of the equal protection clause, a plaintiff must demonstrate a discriminatory motive or purpose. *Cross v. State of Alabama Department of Mental Health & Retardation,* 49 F.3d 1490 (11th Cir.1995) (citing *Whiting v. Jackson State University,* 616 F.2d 116, 122 (5th Cir.1980)); *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir.1985). "[S]uch intent should be inferred in the same manner as [the Supreme Court] said it is inferred under [Title VII]." *Whiting,* 616 F.2d at 121; *Stallworth,* 777 F.2d at 1433 (citing *Lincoln v. Board of Regents,* 697 F.2d 928, 939 (11th Cir.1983) *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983)). Even if no direct evidence of discrimination exists, plaintiff may construct a prima facie case and raise a presumption of unlawful discrimination.[12] Lewis is white and Lightner is black. Evidently, Plaintiff possessed some positive attributes. If not, it is doubtful that he (Lightner) would have ever served as *acting* police chief. Thus, an inference of racial discrimination may be drawn from the foregoing. This is especially true since the court is compelled, at this point, to construe the evidence in the light most favorable to Lightner.

### C. Harassment

■ There is insufficient evidence to establish that the alleged harassment endured by Plaintiff and his wife at their home is so widespread that "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (quoting *Adickes,* 398 U.S. at 167–68, 90 S.Ct. at 1613–14). Therefore, the court finds that Plaintiff has not stated a cause of action against Ariton for this alleged conduct.

---

11. Williams asserted in her affidavit that it "has always been the practice of the Mayor to hire, fire, promote, transfer and otherwise manage the employees of the Ariton Police and other departments under his control." Ms. Williams also stated that the Mayor's decisions "generally went unquestioned." Ms. Williams further stated that other council members had make it known to her that they had "given blanket authority to the Mayor to attend the affairs of the Town of Ariton." *See* Williams aff.

12. Once the plaintiff constructs a prima facie case of discrimination, the burden of production, not the burden of proof shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for [the adverse employment decision]." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once the defendant has done so, the presumption of discrimination dissipates and the plaintiff must have the opportunity to prove that the proffered reason was not the true reason for the adverse employment decision. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

### III. Individual Liability—Qualified Immunity

▪ Plaintiff alleges that Mayors Herring and Laney violated section 1983, which accords private citizens recourse in the wake of constitutional deprivations carried out by officials acting under the color of state law.[13] A section 1983 claim is predicated on two indispensable elements:

first, the conduct complained of must have been committed by a person acting under state law; second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.

*Whitehorn v. Harrelson,* 758 F.2d 1416, 1419 (11th Cir.1985) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). It is undisputed that Mayor Herring and Mayor Laney were acting under color of state law during plaintiff's tenure with the police department. However, defendants contend that they are entitled to qualified immunity as a matter of law because the actions complained of by plaintiff fall within the scope of their official office and are therefore discretionary functions.

The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person should have known." *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), *see also Tindal v. Montgomery County Commission,* 32 F.3d 1535, 1539 (11th Cir.1994). According to the Supreme Court in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096, *see also Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989) ("[t]he *Harlow* decision sets up a bright-line test that is a powerful constraint on causes of action under section 1983.").[14]

▪ The United States Eleventh Circuit Court of Appeals has established the following test when determining whether a government official is entitled to qualified immunity:

1. First, the official must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

2. Should the defendant satisfy his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the part of the defendant official. The plaintiff satisfies this burden by sufficiently demonstrating that the official's actions "violated clearly established constitutional law."

*Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983).

An official satisfies the first element of the two-prong *Zeigler* test and, thereby, shifts the burden to the plaintiff by demonstrating "... 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich,* 841 F.2d at 1563–64 (quoting *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1981)).[15]

---

**13.** Section 1983 provides in relevant part that:

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any state ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured ..."
42 U.S.C. § 1983.

**14.** As articulated by the Eleventh Circuit:

While qualified immunity almost always applies in damage claims against government actors in their individual capacities, the defense is a narrow one, leaving plaintiffs other avenues of relief. Plaintiffs remain free (subject to Eleventh Amendment constraints) to seek money damages against government actors in their official capacity. Plaintiffs may also seek injunctive relief.
*Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 n. 2 (11th Cir.1994).

**15.** The United States Eleventh Circuit Court of Appeals has adopted as binding precedent the decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) *(en banc).*

Here, neither party disputes that the Mayors were acting in their discretionary capacity. The defendants contend that plaintiff was ultimately terminated because of his unprofessional conduct which did not conform to departmental policy. Therefore, in order to defeat defendants' claim for qualified immunity, plaintiff must demonstrate that the defendants' alleged acts of discrimination during his tenure with the police department violated clearly established constitutional or statutory rights of which a reasonable Mayor would have known. *See Barts,* 865 F.2d at 1190 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 527–28, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)) (once qualified immunity defense is raised, the plaintiff bears the burden of demonstrating that the federal "rights" allegedly violated were "clearly established"). Here, the plaintiff contends that the alleged discriminatory pattern and practice by the defendants violated the Thirteenth Amendment to the Constitution as protected by 42 U.S.C. § 1983.

 In order for a right to be clearly established, "[t]he contours of that right must be sufficiently clear that a reasonable Mayor would understand what he is doing is wrong." *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Furthermore, the unlawfulness of the act must be apparent in light of pre-existing law. *See id.* The Eleventh Circuit has stated: "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993). "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violated federal law." *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 (11th Cir.1994) (citing *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039).

In the recent decision of *Rodgers v. Horsley,* 39 F.3d 308 (11th Cir.1994), the United States Eleventh Circuit Court of Appeals stated that "the question ... in all qualified immunity cases, is fact specific...." *Horsley,* 39 F.3d at 311. In *Horsley,* an involuntarily civilly committed patient who was allegedly raped at a hospital brought a section 1983 action against the director of the hospital and chief administrator of the admissions unit of the hospital for failure to provide her with adequate security and failure to adequately train and supervise subordinates. Mona Rodgers, the plaintiff in *Horsley,* was left alone for fifteen minutes in the hospital's smoking room, during which time she was allegedly raped. Mona Rodgers submitted evidence that several incidents of sexual conduct between patients had been reported, but the occurrences were rare. Rodgers was on close watch status when the alleged rape occurred.

The *Horsley* court stated that the question was not whether, in general, involuntarily committed patients have a legal interest under Amendment Fourteen to safe conditions, but rather,

".... in May 1991, was it clearly established in this circuit that it was unconstitutional for a mental institution to fail to supervise a patient for fifteen minutes in the smoking room, when she was on close watch status for a health problem, when the institution had some history of some 'sexual contact' involving patients other than plaintiff but not history of rape in the past twelve years, where a previous patient who was to be similarly monitored disappeared, apparently escaped through a bathroom window, and fell to her death ...?"

*Horsley,* 39 F.3d at 311. The *Horsley* court, in reversing this court, answered the foregoing question in the negative and held that the defendants were entitled to qualified immunity.[16] *Id.*

 Here, Plaintiff contends that mayors, Billy Clyde Herring and Randy O. Laney discriminated against him in his terms

---

**16.** In *Horsley,* Mona Rodgers relied on *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), which held that involuntarily committed patients had a right to reasonably safe conditions of confinement.

and conditions of employment during their respective tenures as mayor of Ariton. The Eleventh Circuit has determined that the equal protection right to be free from intentional racial discrimination is clearly established. *Brown,* 923 F.2d at 1478. This Circuit has since remarked that the illegality of racial discrimination in the work-place is patently obvious. *See Smith v. Lomax,* 45 F.3d 402, 407 (11th Cir.1995). In accordance with the foregoing precedent, the court finds that a reasonable official should have known that the alleged conduct violated clearly established federal law. *See Stewart v. Baldwin,* 908 F.2d 1499, 1503 (11th Cir.1990). Therefore, neither Laney nor Herring is entitled to qualified immunity, and the Defendants' motion for summary judgment on Plaintiff's section 1983, individual capacity claim is due to be denied.[17]

## CONCLUSION

In sum, it is CONSIDERED and ORDERED that:

(1) Defendants' motion for summary judgment on Plaintiff's 42 U.S.C. § 1983 municipal liability claim predicated on retaliatory conduct be and the same is hereby GRANTED;

(2) Defendants' motion for summary judgment on Plaintiff's 42 U.S.C. § 1983 municipal liability claim predicated on improper police conduct in harassing Plaintiff at his home be and the same is hereby GRANTED;

(3) Plaintiff's remaining claims REMAIN viable; and

(4) each party bear his or its costs for costs herein incurred.

---

[17]. The court notes that Lightner must show a purpose or intent to discriminate in order to ultimately prevail. *See Arnold v. Board of Edu-*

*cation of Escambia County,* 880 F.2d 305, 317 n. 16 (11th Cir.1989) (citations omitted).